*In re* Carroll.

No. 18,789.

*In re* W. H. CARROLL, *Petitioner.*

No. 19,050.

*In re* S. A. WELSH, *Petitioner.*

SYLLABUS BY THE COURT.

1. POLICE JUDGE—*Cities of First Class—Legislature Created the Office—Commission May Appoint without City Ordinance.* The office of police judge in cities of the first class operating under the commission form of government was created by the legislature itself, and the passage of an ordinance by the mayor and commissioners fixing the term and salary of such officer is not essential to the authority of the commissioners to appoint a police judge.

2. SAME—*Power to Parole Prisoner—No Power to Recommit after Term of Sentence has Expired.* Under the provisions of chapter 116 of the Laws of 1909 a judge of the police court of cities of the first or second class may parole persons convicted of the violation of city ordinances under such restrictions as he may see fit to impose, but he has no power to extend the conditions of the parole beyond the term of sentence nor has he authority after that time to declare that the conditions of the parole have been violated and to recommit the prisoner and require him to serve the unexpired part of his sentence.

-- No. 18,789.   Original proceeding in habeas corpus. Opinion filed January 10, 1914. Petitioner remanded.

*J. J. Bulger,* of Wichita, for the petitioner. ·

*Earl Blake,* and *Robert C. Foulston,* both of Wichita, for the respondent. ·

No. 19,050.   Original proceeding in habeas corpus. Opinion filed January 10, 1914.   Petitioner discharged.

*T. A. Noftzger, George Gardner,* both of Wichita, and *J. B. Larimer,* of Topeka, for the petitioner.

*Earl Blake,* and *Robert C. Foulston,* both of Wichita, for the respondent.

The opinion of the court was delivered by

JOHNSTON, C. J.: The petitioners, who are confined in the city jail of Wichita, ask to be released in separate proceedings in habeas corpus brought by them. At different times each was convicted of the violation of an ordinance which provided for prohibiting and punishing the sale of intoxicating liquors and the maintenance of a liquor nuisance in the city. The penalty adjudged in each case was a fine of $500 and imprisonment for six months in the city jail. Afterwards the petitioners applied to the police judge for paroles under chapter 116 of the Laws of 1909 and in the application each promised, substantially, that he would not sell or give away intoxicating liquors or keep any on his person or in any place under his control, and would not violate the ordinances of the city or the laws of the state. He further promised that he would report to a certain person on Monday evening of each week for a period of two years from the time of the parole. Upon the application and the conditions named the police judge, on January 2, 1913, granted a parole to Carroll under which he was at liberty until May 19, 1913. At that time a complaint was made that he had violated his parole, and in a hearing wherein the petitioner and his counsel were present, and upon the evidence produced, the police court found that he had violated the term of his parole and ordered that he be recommitted. It was accordingly adjudged that Carroll should serve out the sentence and pay the fine imposed the same as if no parole had ever been granted. A parole was likewise granted to Welsh on January 2, 1913, upon similar conditions, and it was revoked by the police court upon a hearing duly had upon September 16, 1913. As in the Carroll case, Welsh was held to have violated his parole and was adjudged to serve his sentence and pay his fine as though no parole had been granted. The petitioners were re-

committed to the city jail and were confined there when these proceedings were brought.

In behalf of Carroll it is contended that Clyde Souders, who was acting as police judge and revoked the parole, was not in fact a police judge and had no authority to recommit him to jail. It appears that Wichita is a city of the first class operating under the commission form of government. On April 11, 1911, the board of commissioners appointed Souders as police judge and he duly qualified and has since continued to hold the office. On April 7, 1913, his term having ended, he was reappointed and again qualified by taking the oath of office and giving a bond, and he was serving under that appointment when the order revoking the parole was made. The contention is that Wichita had no police judge and that there was no authority in the commission to appoint one because no ordinance had been enacted fixing the term and salary of the police judge. The statute relating to the appointment is as follows:

"The board of commissioners may appoint, by a majority vote of all the members thereof, the following officers, to wit: A city attorney, a city clerk, a city treasurer, a city auditor, a city engineer, a superintendent of streets, a superintendent of waterworks, a secretary of waterworks, a fire marshal, a chief of police, a city physician, a judge of the police court, a superintendent of public parks, a city assessor, and such assistants and other officers and servants as they may deem necessary for the best interests of the city; but no such officer shall be appointed until his term and salary shall have been fixed by ordinance. The terms of all appointive officers shall expire with the term of office of the board appointing them: *Provided,* That they shall hold their respective offices until their successors are appointed and qualified: *Provided,* That in case of appointment to fill a vacancy, such appointee shall only serve for the remainder of the term for which his predecessor was appointed." (Gen. Stat. 1909, § 1304.)

*In re* Carroll.

It is argued that the passage of an ordinance fixing the term and salary of the police judge was a condition precedent to the creation of the office by the commission. The provision that no such officer shall be appointed until the passage of an ordinance fixing the term and salary applies to the other unnamed officers provided for in the section quoted which the board may deem necessary in addition to those specifically enumerated. The offices of city clerk, city treasurer, city assessor, police judge and the others that are definitely designated in the act were created by the legislature itself. They were deemed by the legislature to be absolutely necessary for the government of the city and hence were directly created. Recognizing that assistants and other subordinate officers and servants might become necessary the board was authorized to appoint them from time to time as they were needed, with the limitation that they should not be appointed until their terms and salaries had been fixed by an ordinance. This has been the interpretation placed upon the section, and it was so recognized in *Jagger v. Green,* 90 Kan. 153, 133 Pac. 174. Whether a subordinate officer appointed by the commissioners without the passage of an ordinance fixing his term and salary would have any validity or whether having a potential existence he would not be a *de facto* officer and his acts not open to question in a collateral proceeding we need not determine. The office of police judge was created by the legislature and as to its existence the board had no discretion. It may also be added that as to the police judge there was an ordinance fixing his salary, and so far as the term is concerned the statute provides that his term as well as that of all other appointive officers shall expire with the term of the board appointing them. (Laws 1907, ch. 114, § 88, Gen. Stat. 1909, § 1304; *Jagger v. Green,* supra.)

When and by whom may a parole be revoked, is the next question presented. The legislature of 1909

*In re* Carroll.

passed an act empowering the judge of the police court in cities of the first and second class to parole persons convicted of the violation of ordinances (Laws 1909, ch. 116), and section 2 of the act is as follows:

"The judge of the court named in section 1 of this act, subject to the restrictions hereinafter provided, may, in his discretion, when satisfied that any person against whom a fine has been assessed or a jail sentence imposed by the court, or any person actually confined in the city jail under the judgment of said court, will if permitted to go at large not again violate the law or ordinance, parole such person and permit him to go at large, upon such conditions and under such restrictions as the judge granting the parole shall see fit to impose. Such judge may at any time, without notice to such person, terminate such parole by simply directing execution to issue on the judgment; or, in case the person shall have been actually confined in jail, the parole may be terminated by directing the chief or captain of police or any police officer to retake such person under the commitment already in his hands. After a parole has been terminated, as above provided, the judge may, in his discretion, grant a second parole, but no more than two paroles shall be granted the same person under the same judgment of conviction. If a parole shall be terminated the time such person shall have been at large on parole shall not be deducted from the time he shall be required to serve, but the full amount of the fine shall be collected or the full time in jail be served, the same as if no parole had been granted."

In section 3 it is made unlawful for an officer to release from custody one who has been convicted unless such person has been paroled as the act provides or pardoned by the mayor. Section 4 provides that any one who commits an offense against the laws of the state or the ordinances of the city when under a parole may be arrested and tried in the same manner as if he had not been convicted and paroled. Section 5 provides:

"The action of the judge in refusing, granting or terminating a parole shall not be subject to review by an appellate court."

It is argued that the expression "such judge," in section 2, means the judge granting the parole and that only the one then in office can terminate the parole, and further, that he can not do so in the succeeding term even should he be reappointed and remain in office. In the preceding provisions of the statute the legislature had spoken of the judge of the police court, and the phrase "such judge" manifestly means the judge of that court and not the individual who had been holding the office at some earlier time.

But is there no limit to the period of a parole? Can it have been the purpose of the legislature that a police judge who, having imposed a sentence of imprisonment for ten days, can issue a parole upon the condition that the paroled person shall be under surveillance for ten years, or even longer, and subject to be recommitted at any time for a violation of the parole? It is true the statute provides that the parole shall be granted upon such conditions as the police judge may see fit to impose, but the view of the court is that it was not the legislative intent that the parole period might be indefinitely extended. A limit is fixed in the act authorizing the district courts to parole persons convicted of violating the criminal laws of the state, and this to some extent indicates the policy of the state respecting the absolute discharge of paroled persons. Although the statute relating to paroles granted by police judges does not expressly declare a limit, one is doubtless contemplated, and since provision is made for imprisonment for a fixed time, that should be regarded as the limit of time for the termination of a parole and the absolute discharge of the paroled person. It is argued that a parole is a matter of grace and discretion, but could it be regarded as a gracious act to hold over the head of a convicted person the unexecuted sentence for a lifetime with the uncertainty that he might be recommitted to prison without notice at any time when the police judge chose to

order it? When the time for imprisonment is adjudged, the expiration of that period, whether the person is on parole or in jail, ends all punishment and satisfies the sentence. While a parole may be granted on such conditions as the judge may prescribe, they must be such as may be performed within the term for which the prisoner has been sentenced. The conditions which a judge may lawfully impose in granting a parole are to be determined from the statute itself, and being a matter of interpretation of our own statute pertinent authorities are not numerous, but as having some bearing on the question involved the following cases are cited: *In re Prout,* 12 Idaho, 494, 86 Pac. 275, 5 L. R. A., n. s., 1064; *Woodward v. Murdock,* 124 Ind. 439, 24 N. E. 1047; *Scott v. Chichester,* 107 Va. 933, 60 S. E. 95, 16 L. R. A., n. s., 304; *West's Case,* 111 Mass. 443; *Scott Huff v. B. F. Dyer, Warden Ohio Penitentiary,* 4 Ohio Cir. Ct. 595, 2 Ohio Dec. 727.

It appears that neither of the petitioners ever served any part of the prescribed terms of imprisonment prior to the granting of the paroles on January 2, 1913. Each had taken an appeal from the judgment rendered against him, to the district court, and the appeal was dismissed on his application just prior to the time he applied to the police judge for the parole. Carroll was sentenced to imprisonment in the city jail for a period of six months, and that period had not expired when the parole was terminated by the police judge. Time began to run when the parole was granted on January 2, 1913, and the parole was terminated on May 19, 1913, less than five months after the parole was granted. The order terminating the parole as to him and recommitting him to jail is held to be valid, and therefore he must be remanded. The petitioner Welsh was out on parole from January 2, 1913, until September 16, 1913, and as more than six months, the term fixed by the sentence, had expired when the parole was

revoked the judge was without authority to recommit him to jail under the judgment of conviction. He will therefore be discharged.

BURCH, J. (concurring specially) : I concur in the judgment rendered. The legislature undertook to realize in the parole law some of the modern ideas respecting the treatment of persons who have been guilty of infractions of the social order. Fines and imprisonment are no longer regarded as compensations to offended society, and the whole theory of punishment has changed and has been placed upon a scientific and humanitarian basis which regards both the protection of society and the welfare of the delinquent. When a person incarcerated for crime has fairly demonstrated that he intends to live an orderly and correct life, and has capacity to do so, the purpose of imprisonment has been substantially accomplished. Society will not suffer from his release, and his own welfare will best be promoted if he be allowed to serve the remainder of his sentence outside the prison walls. Upon these considerations is based the original form of the "parole," which has been defined as follows:

"A parole is a form of conditional pardon, by which the convict is released before the expiration of his term, to remain subject, during the remainder thereof, to supervision by the public authority and to return to imprisonment on violation of the condition of the parole." (29 Cyc. 1562.)

It has long been recognized that few records should ever be made in criminal courts against young persons, or even adults who, although they may have offended, are not criminals. Besides this, it is well demonstrated by criminologists and expert welfare workers that some substitute should be found for incarceration in as many cases as possible where antisocial conduct is not a habit and the offender possesses a fair measure of self-control, self-respect, and other

*In re* Carroll.

moral and spiritual resources to draw upon. In numerous cases the simple fact of conviction is more than enough punishment, and fine and imprisonment have no legitimate or efficacious purpose to subserve. The foregoing doctrines form the foundation of the statute involved in these cases, which provides that if the judge be satisfied that an offender will not again violate the law he need not be fined or imprisoned but may be allowed to go at large upon such conditions and restrictions as the judge may impose.

It needs no argument to demonstrate that the legislature did not confer unlimited authority to impose conditions and restrictions. It did not mean that the offender might be required to curry the judge's horses or vote for him or some one favored by him for an office. The conditions and restrictions contemplated are those germane to the problem presented as to whether or not the hard-and-fast penalty affixed by the law should be enforced. It is not a matter of grace or of bargain between the judge and the offender but a matter of the best interest of society and of the offender under the particular circumstances of the particular case. Neither was it intended that by the parole a general guardianship should be established. The question always is whether the statutory penalty will best accomplish in the case of a particular person guilty of a specific breach of law, the true purpose for which alone the penalty should be inflicted. If not there should be a discharge with suitable guaranties against lapses, in lieu of the penalty. This being true, an invented surveillance extended indefinitely by a police judge would violate the fundamental theory of the parole system. Such authority over an individual, perhaps to be sprung upon him in after years when the police court incident has been entirely forgotten, will not be inferred from general language. It must be granted in specific terms.

"Indiscreet attempts to extend the measure beyond its legitimate and restricted sphere have provoked reaction and imperilled the whole movement." (Henderson, Preventive Agencies and Methods, [Russell Sage Foundation] p. 259.)

The legislature must be credited with knowledge of this fact derived from experience in the use of the parole expedient. In the case of district judges the power was limited to two years, and it is not reasonable to suppose that petty judicial officers having cognizance of minor offenses only were clothed with larger discretion, extending even throughout the period of the natural life of an offender.

No specific time having been stated in the statute, the legislature evidently intended that the accepted views of the nature and purpose of the parole should prevail. Applying those views to the cases of the petitioners, their paroles were in the nature of probations. They were permitted to serve their sentences, not in jail, but at large under the condition of strict law observance and under the condition that a misstep would entail actual incarceration for the full period of their sentences and payment of fine and costs. Whether or not the petitioners were persons to whom the principle of the parole should be extended was, of course, a matter for the police judge to determine. That the principle has been both misapplied and abused in many cases in this state is a matter of common knowledge.

JOHNSTON, C. J. (dissenting) : I am unable to concur in the view that the conditions of a parole end with the expiration of the term for which a prisoner is sentenced, which, in effect, is a holding that the time a prisoner is out on parole shall be counted as time served on the sentence. It was competent for the legislature to provide for the granting of paroles to convicted persons and upon such conditions as it might deem best. It has provided that paroles may be granted upon such

conditions and restrictions as the police judge may see fit to impose. He can not, of course, impose a condition that would conflict with law or morals or which is incapable of performance. There is no claim that there is anything illegal, immoral or incapable of performance in the conditions upon which the paroles in question were granted. The legislature might have said that paroles shall be granted upon the condition that a repetition of the offense at any time during the life of the prisoner would be ground for revoking the parole and requiring him to serve out the unexpired term of his sentence. It has provided that paroles shall be granted upon any condition that the judge may see fit to impose, and to avoid some of the questions that arose in the cases cited it provided that in case of a revocation the time that the prisoner shall have been at large on parole shall not be deducted from the term imposed by the sentence. To prevent misconception of the legislative purpose and the adoption of the theory taken by some of the courts in cases cited, that the prisoner was under some restraint and undergoing a sort of punishment while out on parole, the legislature expressly provided that on the termination of a parole by the judges "the full amount of the fine shall be collected or the full time in jail be served, the same as if no parole had been granted." (Laws 1909, ch. 116, § 2, Gen. Stat. 1909, § 826.)

There is no provision in the statute that the duration of the conditions imposed by the judge shall be long or short, and I find nothing in the act giving any basis for the holding that the conditions shall not be extended beyond the period fixed in the sentence. It might have been good policy to have provided for some limitation in the conditions, but that is a matter of legislative discretion and belongs in a field into which the court may not intrude. The fact that a limit was specifically provided for in cases of paroles granted by district

courts and not in those granted by police judges only argues that none was intended in the latter case.

Counsel speak of the hardship of extending the conditions of a parole indefinitely and insist that diligent search should be made for an interpretation that would avoid it. A prisoner is not compelled to accept a tendered parole. If the conditions are onerous or unacceptable to him he can refuse the parole and remain in prison and serve out the imposed sentence. As a matter of grace, and in part to prevent a recurrence of misconduct, he is generally offered liberty on condition of good conduct in the future with the option to accept or reject the parole. Such a condition can hardly be regarded as onerous, and experience has shown that the granting of paroles and pardons on conditions of this kind has operated beneficially. The petitioners were given paroles on condition of good behavior and that they would abstain from violating the prohibitory liquor law for a period of two years—not an unreasonable requirement. The judge may have known something of the habits and history of the petitioners and evidently concluded that such a restriction would enable them to resist the temptation to commit the offense of which they had been convicted. In case an unreasonable condition is imposed a prisoner may appeal to the mayor, who has the authority to pardon, or to the successor of the judge, who may be more lenient and reasonable. It can not be assumed that the judge will impose conditions that are unreasonable or that are unduly severe, and to provide against such a contingency is a legislative rather than a judicial function. The parole or the length of time the prisoner is at liberty under it does not shorten nor nullify the sentence of the court. The power to grant the parole includes the power to fix the conditions upon which it may be revoked, and the acceptance of the parole is a binding acceptance of the stipulated conditions. When the parole is terminated the prisoner can be required to

serve the unexpired part of his sentence the same as if
no parole had been granted. The time during which he
has been at liberty under a parole can not be regarded
as time served on the sentence. Some of the authorities
touching the general subject and which tend to sup-
port this view of the statute are: *Fuller v. The State,*
122 Ala. 32, 26 South. 146, 45 L. R. A. 502, 82 Am. St.
Rep. 17; *State v. Wolfer,* 53 Minn. 135, 54 N. W. 1065,
19 L. R. A. 783, 39 Am. St. Rep. 582; *People v. Marsh,*
125 Mich. 410, 84 N. W. 472, 51 L. R. A. 461, 84 Am.
St. Rep. 584; *Conlon's Case,* 148 Mass. 168, 19 N. E.
164; *State v. Barnes,* 32 S. Car. 14, 10 S. E. 611, 6 L.
R. A. 743, 17 Am. St. Rep. 832; *In re McKenna,* 79 Vt.
34, 64 Atl. 77; *Neal v. The State,* 104 Ga. 509, 30 S. E.
858, 42 L. R. A. 190, 69 Am. St. Rep. 175; *Arthur v.
Craig,* 48 Iowa, 264, 30 Am. Rep. 395; *State v. Hunter,*
124 Iowa, 569, 100 N. W. 510, 104 Am. St. Rep. 361;
Note, 5 L. R. A., n. s., 1064; Note, 16 L. R. A., n. s., 304.

An additional reason why a discharge should not be
ordered here is that the petitioners were adjudged to
stand committed until the fines and costs had been paid,
and it is conceded that payment has not been made.

Justices BENSON and WEST join in the foregoing
dissent.