No. 37,063

ROBERT G. LOWMAN, *Petitioner*, v. R. H. HUDSPETH, Warden, Kansas State Penitentiary, *Respondent*.

(187 P. 2d 936)

Opinion filed December 19, 1947.

*Joseph S. Payne,* of Kansas City, argued the cause, and was on the brief for the petitioner.

*Harold R. Fatzer,* assistant attorney general, argued the cause, and *Edward F. Arn,* attorney general, was with him on the brief for the respondent.

The opinion of the court was delivered by

BURCH, J.: This original habeas corpus proceeding presents the question whether the board of administration must comply with G. S. 1935, 76-2316, hereinafter set forth, in order to effect the rev-

ocation of a parole from a state reformatory. A résumé of the essential facts follows.

The petitioner entered a plea of guilty to a charge of grand larceny arising by reason of his having stolen personal property of the value of $47, and was sentenced to the Kansas Industrial Reformatory for an indeterminate period. His maximum sentence under the law could not exceed five years. He was received at the Hutchinson reformatory on September 7, 1935, and on July 7, 1936, was paroled therefrom pursuant to the terms of a printed form parole agreement which provided, among other things, that the paroled inmate should write a letter on the first day of each month to the parole officer of the reformatory giving therein certain detailed information relative to his employment, conduct and such other information as the parole officer might from time to time desire. The parole agreement also contained a provision reading:

". . . understanding that he is all times in the *legal custody* and under the control of said Board of Administration until he shall have received written notice from the Parole Officer or General Superintendent of the Reformatory of his final discharge." (Emphasis supplied.)

Such parole agreement also provided that the paroled inmate should be liable to be retaken and again confined at the discretion of the board of administration in the event he violated any of the provisions of the parole agreement or if for any other reason the board of administration should deem it best to retake the paroled inmate.

In the month of April, 1937, the petitioner failed to make his regular monthly report to the parole officer and similarly failed to report during the month of May, 1937. Such omissions on the part of the petitioner clearly violated the terms of his parole, and in accordance with the regular practice of the reformatory in similar cases, which practice was approved by the state board of administration, the petitioner's record was removed from the parole file to the parole-violator file on June 10, 1937. Nothing else was done on June 10, 1937, by the reformatory officers or by any representatives of the state board of administration. Moreover, the record discloses that nothing was done by any Kansas authorities insofar as the paroled inmate was concerned until June 5, 1945, when such authorities issued a detainer for the petitioner's return to the Kansas institution for parole violation. Thus, it appears that for a period of practically eight years the board of administration failed

to enter any finding to the effect that the petitioner had violated his parole agreement and failed to issue any written order directing any officer to rearrest the petitioner and return him to the reformatory. And no order directing the rearrest of the petitioner was issued by the superintendent or parole officer of the reformatory during such eight-year period.

Perhaps such inactivity on the part of the Kansas authorities can be explained by the petitioner's record of crime since he was released from the Kansas reformatory. During June, 1937, the petitioner was sentenced to serve a term in the Colorado state penitentiary and was released therefrom in June, 1938. He was again sentenced to the Colorado state prison in August, 1939, and was released therefrom in 1941. In July, 1942, he was sentenced to serve a term in the Oklahoma state prison and while in that institution a federal detainer was issued for him. He was discharged therefrom on April 7, 1945, and on April 22, 1945, he was placed in confinement at the United States penitentiary in Leavenworth, Kan. It was while he was in the federal institution that the Kansas authorities issued a detainer for his return on June 5, 1945. Such detainer was executed as of October 28, 1946, and he was then taken into custody by the Kansas authorities and placed in the state penitentiary in Lansing to serve the remainder of the one-to-five-year term which the petitioner originally began serving on September 7, 1935. The transfer of the prisoner from the reformatory to the Kansas state penitentiary was authorized by the state board of administration as of September 4, 1946, pursuant to the authority granted such board by G. S. 1935, 76-2314. Counsel for the petitioner contends that the statute does not authorize such a transfer, but if the petitioner can no longer be held in custody by any Kansas authorities the question of where he is being held by them becomes secondary. The first question which must be determined is whether there has been any valid revocation of the petitioner's parole from the state reformatory.

The applicable section of our statute pertaining to the revocation of paroles of prisoners from a reformatory reads as follows:

"When in the judgment of said board of administration any such paroled prisoner has violated his parole, *they shall enter a finding to that effect,* and *issue a written order* certified by the secretary, directing the superintendent in person, or by some subordinate officer of said reformatory, or any sheriff or constable in the state, to rearrest and return said prisoner to the reformatory. Said *order* shall be a sufficient warrant for all officers named to authorize such

officer to arrest and return to actual custody any conditionally released or paroled prisoner, and it is hereby made the duty of all such officers to execute said order the same as ordinary criminal process. If any paroled prisoner is guilty of the violation of his parole when said board of administration is not in session, the *superintendent may issue his order* to any subordinate officer of the reformatory or to any sheriff or constable in the state, directing that said prisoner shall be rearrested and returned to the reformatory, there *to be held until the next meeting of the board of administration*; at which time the board shall direct that he be kept in the institution or allowed to go upon parole, as they see fit." (Emphasis supplied.) (G. S. 1935, 76-2316.)

According to respondent's abstract, the superintendent of the reformatory did not remove the petitioner's record card from the parole file to the parole-violator file. Such action was taken by E. W. Ford, who has been employed in the reformatory at Hutchinson, Kan., for the past twenty years for the purpose of keeping the records of all paroles of persons confined in or released from the reformatory. Possibly he acted in the capacity of a parole officer, although the record is not clear. An affidavit of E. W. Ford is part of the record. There is nothing in the affidavit which even by intimation indicates that the board of administration ordered E. W. Ford to enter a finding to the effect that the paroled prisoner had violated his parole, as the statute requires. The record clearly shows that with the exception of the shifting of the petitioner's record card from one file to another, no compliance whatever was made with the requirements of the statute during a period in excess of the five-year maximum sentence provided by law.

The affidavit of E. W. Ford sets forth that for a period of at least twenty years it has been the practice and custom of the board of administration and the superintendent and parole officer at the reformatory to revoke paroles by the method followed in the present case. Counsel for the respondent, therefore, assert the rule that in the construction and interpretation of a statute, the construction placed upon it by the executive agency charged with the duty of administering it should be given great weight. In support of such rule they cite *State, ex rel., v. State Highway Comm.*, 132 Kan. 327, 295 Pac. 986; *Harrison v. Benefit Society*, 61 Kan. 134, 59 Pac. 266; and 59 C. J. 1025-1028, § 609. But controlling weight cannot be given to an administrative construction of a statute unless the meaning of the statute is ambiguous, and courts are not justified in following a construction that is clearly inadequate by reason of the specific terms of the statute. (See *Lowden v. Garvie*, 152 Kan. 388,

392, 103 P. 2d 832; also, 59 C. J. 1030, and 25 C. J. S. 92, § 10, Customs and Usages.)

Counsel for the respondent call our attention to the provisions of G. S. 1935, 62-1528, which is a part of chapter 375 of the Laws of 1903, relating to the indeterminate-sentence law which was passed two years later than G. S. 1935, 76-2316, *supra*, and suggest that such statute may be applicable to the arrest and return of inmates from the reformatory. The provisions of such statute, however, are clearly applicable to paroles from the Kansas state penitentiary. It is obvious that G. S. 1935, 76-2316, controls the revocation of paroles to inmates of the reformatory just as a different statute pertains to paroles by district courts (G. S. 1935, 62-2214). In addition, counsel for the respondent call our attention to G. S. 1935, 76-2306, which reads in part, as follows:

"The term of imprisonment of any person so convicted and sentenced shall be terminated by the board of administration as authorized by this act, but such imprisonment shall not exceed the maximum term provided by law for the crime for which the person was convicted and sentenced."

Our attention is also directed to G. S. 1935, 76-2317, which relates to the release and restoration of civil rights of a prisoner on parole. By reason of such statutes, the respondent suggests that it is the board of administration which makes a final and absolute release of any prisoner upon parole, and that a prisoner is never released until action for such purpose has been taken by the board of administration or until the governor has granted a pardon or commutation of the sentence. The logic of such reasoning would lead to a weird result. In this case the prisoner has been paroled and his parole has never been revoked in compliance with the applicable statute. Nevertheless, he is in the penitentiary. Surely he cannot be held there indefinitely awaiting the performance of some administrative or ministerial act on the part of the board of administration. As a result of the failure to revoke the parole of the petitioner in compliance with the statute, it may be said that the petitioner was still on parole at the time his maximum sentence expired. There must be a limit to the period of a parole even in the absence of a statute which provides that a prisoner on parole shall be released at the expiration of the term of his sentence. The power to parole a prisoner does not carry with it the power to recommit him after the term of the sentence has expired. In the case of *In re Carroll*, 91 Kan. 395, 137 Pac. 975, it was said:

"When the time for imprisonment is adjudged, the expiration of that period, whether the person is on parole or in jail, ends all punishment and satisfies the sentence." (p. 401.)

See, also, *Badgley v. Morse,* 132 Kan. 544, 296 Pac. 344. Such cases may not be controlling in the present case because they construe different statutes but they are indicative of the general policy of the state. By the specific terms of the parole agreement which the petitioner and the board of administration executed, the paroled inmate was stated to be "in the legal custody" and under the control of the board of administration during the period of his parole. We need not determine in this case whether such "legal custody," as contemplated by the agreement and by G. S. 1935, 76-2315, was the equivalent of actual imprisonment. Regardless of the answer to such a question, the board of administration could not impose obligations in the parole agreement which would vest such board with authority to disregard the plain terms of G. S. 1935, 76-2316. If such statute is impractical, the remedy must develop from legislation—not litigation.

The writ is allowed.