STATE OF IOWA *ex rel.* FRANK DAVIS v. WM. A. HUNTER, as Warden of the Penitentiary at Anamosa, Appellants.

**Conditional pardon:** REVOCATION. The governor has power to grant a prisoner an indefinite suspension of sentence, which in effect is a conditional pardon, providing for revocation at his pleasure, and no judicial determination of a violation of the condition is essential to authorize the governor to terminate the suspension and recommit the prisoner.

**Conditional pardon:** DIMINUTION OF SENTENCE. The provision in a suspension of sentence, that a violation of its conditions shall work a forfeiture of the prisoner's statutory right to diminution of sentence for good conduct, is unauthorized and will not have that effect even though assented to by the prisoner.

*Appeal from Jones District Court.*— HON. B. H. MILLER, Judge.

WEDNESDAY, JULY 13, 1904.

THIS is an appeal by defendant, Hunter, as warden of the penitentiary at Anamosa, from an order made in a *habeas corpus* proceeding discharging Frank Davis from further imprisonment in said penitentiary under commitment on conviction for the crime of murder in the second degree, and a sentence of seventeen years' imprisonment at hard labor.— *Affirmed.*

*Chas. W. Mullan,* Atty. Gen.; *C. J. Cash,* Co. Atty., and *F. O. Ellison,* for appellant.

*Tom H. Milner,* for appellee.

McCLAIN, J.— After the applicant for this writ of *habeas corpus* had served more than nine years of his seventeen years' sentence, and when, under the provisions of the statute as to diminution of sentence for good conduct (Code, section 5703, which is a substantial re-enactment of the provisions of Acts 18th General Assembly, chapter 154, section

1, which was in force when the applicant was committed), he would have been entitled to his discharge on serving for a further period of sixty-three days without any misconduct authorizing a forfeiture of the good time which he had earned, or would be entitled to earn under the provisions of that statute, his sentence was suspended by the Governor. The terms of the suspension were that it should remain in force during the pleasure of the chief executive, and might be revoked by said executive and the prisoner remanded for further execution of the sentence, and that the prisoner accepted the suspension with the full understanding that it might be so revoked, and that "whatever allowance and rebate he may have heretofore earned by reason of good conduct while incarcerated in the penitentiary will be forfeited by operation of such revocation, and he will be thereupon recommitted to serve the remaining period of his original sentence, without any rebate or allowance for good time heretofore earned." It was also stated in the order of suspension that the prisoner would be expected to abstain from the use of intoxicating liquors, and from frequenting places where intoxicants were sold or kept for sale, and in other ways so conduct himself as to justify the conclusion that the public welfare would not be endangered by the continuation of the suspension.

About two and one half years after the prisoner had been released under this executive order, information was received at the executive office that the person whose sentence had thus been suspended was under arrest in Connecticut for the crime of assault, and that he had been conducting himself in such a manner as to justify the conclusion that the public welfare was very seriously endangered by his being at large. Without specifying the details of the information as to his conduct, it is sufficient to say that it was to the effect that he had been guilty of the grossest criminal misconduct, and was a disorderly, desperate, and dangerous person, and that, instead of complying with the specific

requirement not to frequent places where intoxicants were sold or kept for sale, he had been engaged in the keeping and illegal sale of intoxicating liquors, for which offense a warrant of arrest had been made out, but not served on account of his flight. The communication to the executive office in which this information was conveyed was from a prosecuting attorney in Connecticut, but, as the court below refused to allow this communication to be introduced in evidence, we need not further refer to it. It is sufficient to say that the Governor appears to have had reasonable ground on which to base his order, issued immediately after the receipt of this communication, specifying that, for good and sufficient reasons appearing to him, the suspension of sentence was revoked; and by the order said Davis was directed to be apprehended, and returned to the warden of the penitentiary at Anamosa, to be confined in said penitentiary " for the whole of his unexpired term of sentence." In pursuance of this order, said Davis was returned to the penitentiary, and, after serving such length of time as to more than cover the sixty-three days which he would have been required to serve, had his sentence not been suspended and had he continued to pursue such a course of good conduct in the penitentiary as would have entitled him to the benefit of the statutory provisions, he brought this writ of *habeas corpus* to secure his release.

It is argued by counsel for the prisoner that the order of recommitment only authorized confinement for sixty-three days, but, construing the order of revocation in the light of the language used in the order of suspension, we think it was the plain intention of the Governor that he should be kept in confinement for the additional period of more than seven years for which he might have been confined under the original sentence, without the benefit of the statutory provision as to good conduct; and therefore we have before us the question whether the Governor, in granting a suspension of sentence to a prisoner in the penitentiary, may law-

fully impose as a condition to be accepted by him the require-
ment that, in the event of the revocation of the suspension
by the Governor in his discretion, the prisoner may be reim-
prisoned, with the penalty of a forfeiture of the diminution
of his sentence which, under the statute, he would have
enjoyed, had he not accepted the benefits of the suspension.

The power to grant reprieves, commutations, and par-
dons conferred upon the Governor by the Constitution,
article 4, section 16, includes the power to grant a conditional

1. CONDITIONAL    pardon.   *Arthur v. Craig,* 48 Iowa, 264.   And
   PARDON: revo-
   cation.        an indefinite suspension of sentence on condi-
tions is undoubtedly, in practical effect, a conditional pardon.
It was said by this court in the case just cited that " the
executive may annex to a pardon any condition, precedent
or subsequent, provided it be not illegal, immoral, or impos-
sible to be performed "; and we have no doubt that the
Governor may, as a condition of the continuance of the sus-
pension of sentence, require the prisoner to abstain from acts
which are not in themselves criminal, or from a course of con-
duct which would not in itself constitute a violation of law.
There is some conflict among the authorities as to the method
of procedure to be pursued when a prisoner who has availed
himself of a conditional pardon has been guilty of a breach
of the conditions imposed.   It has been held by some courts
that there must be a judicial determination of the facts
amounting to a breach of the condition, and, construing the
conditional pardon as a grant on a condition subsequent, this
view is not unreasonable.   See *State ex rel. O'Connor v.
Wolfer,* 53 Minn. 135 (54 N. W. Rep. 1065, 19 L. R. A.
783, 39 Am. St. Rep. 582); *People v. Moore,* 62 Mich. 496
(29 N. W. Rep. 80); *People v. Cummings,* 88 Mich. 249
(50 N. W. Rep. 310, 14 L. R. A. 285, and note); *People
v. Burns,* 77 Hun, 92 (28 N. Y. Supp. 300).   It has been
said, however, in other cases, that the determination of the
facts constituting a breach of condition need not be on in-
dictment, nor on trial by jury.   *State v. Chancellor,* 1 Strob.

347 (47 Am. Dec. 557). And in some jurisdictions it has been held that the authority to determine whether the conditions of the pardon have been broken may be conferred upon the Governor, who can finally determine the question of fact, and remand for further imprisonment without judicial proceedings. *Kennedy's Case,* 135 Mass. 48; *Fuller v. State,* 122 Ala. 32 (26 South. Rep. 146, 45 L. R. A. 502); *State v. Smith,* 1 *Bailey,* 283 (19 Am. Dec. 679). But the order of suspension in the case before us contained the express condition that it might be revoked at the discretion of the executive, and should remain in force only during his pleasure; and it is plain, therefore, from its very terms, that no determination of any fact was essential to the authority of the Governor to terminate the suspension and cause the prisoner to be returned to the penitentiary. It cannot be contended, therefore, that any judicial proceeding was necessary. This was expressly decided in *Arthur v. Craig, supra;* and, to the same effect, see *Woodward v. Murdock,* 124 Ind. 439 (24 N. E. Rep. 1047).

But the Governor, in revoking the suspension, attempted to exercise a power reserved in the original order of suspension — of forfeiting the statutory deduction for good con-

2. CONDITIONAL PARDON: diminution of sentence.

duct which the prisoner might have availed himself of, had he not accepted the benefits of the suspension — and the question is whether, by an arrangement between the executive, granting a conditional pardon or suspension of sentence, and the prisoner, accepting it, the statutory privilege of diminution of sentence for good conduct while in the penitentiary can be taken away. The executive may withdraw what he has granted, and he may specify the conditions on which such withdrawal shall be made, or he may make the continuance of the privilege conditional on his own pleasure and discretion. But we find no authority in the statute nor in adjudicated cases for the exercise by the Governor, at his discretion, of the power to deprive a prisoner of his statutory diminution of

sentence on account of good conduct while in prison. It would not be claimed that the executive could stipulate, as a consequence of the revocation of the privilege granted and accepted, that the prisoner should serve a longer term than that for which he had been sentenced. *Commonwealth v. Fowler,* 4 Call, 35. True, it has been held that the executive may impose the condition that the prisoner leave the State. *Ex parte Hawkins,* 61 Ark. 321 (33 S. W. Rep. 106, 30 L. R. A. 736, 54 Am. St. Rep. 209) ; *Ex parte Marks,* 64 Cal. 29 (28 Pac. Rep. 109, 49 Am. Rep. 684), or that the prisoner shall reimburse the State for the expenses of his prosecution by the payment of a specified sum annually for a certain number of years. ' *People v. Marsh,* 125 Mich. 410 (84 N. W. Rep. 472, 51 L. R. A. 461, 84 Am. St. Rep. 584). But in no case which we have been able to find has it been attempted to compel performance by the prisoner of the obligations entered into by him in accepting the benefits of the conditional pardon or suspension. If we should sustain the enforcement of the condition in the present case, we would, in effect, sustain and enforce a contract made by the prisoner, waiving his statutory diminution of sentence. No such contract is authorized by statute, nor, as we think, is any such contract capable of enforcement. Indeed, it is only in a somewhat fictitious sense that a conditional pardon is spoken of as a contract. It is, as a matter of fact, simply the grant and acceptance of a privilege, with a condition attached, in accordance with which the privilege may be revoked. *State v. Smith,* 1 Bailey, 283; 19 Am. Dec. 679; *Lee v. Murphy,* 22 Gratt. 789; 12 Am. Rep. 563; *Greathouse's Case,* 4 Sawy. 487; 10 Fed. Cas. 1057.

The statutory provisions as to diminution of imprisonment for good conduct do not, perhaps, confer upon the prisoner any legal right; but, at any rate, they confer a statutory privilege, of which the prisoner may avail himself. No doubt, the forfeitures provided by Code, section 5704, may be imposed by the warden without a judicial determina-

tion as to the facts constituting a violation of the rules, regulations, or laws for the government of the penitentiaries. But if no such forfeiture has been declared until the prisoner has served for such length of time that, with the diminution of sentence provided for, he is entitled to his discharge, he can, without question, secure his discharge in a legal proceeding. We reach the conclusion, therefore, that the diminution of imprisonment provided for by statute is a privilege of which the prisoner can be deprived only in accordance with the provisions of the statute, and that, as no provision is made for forfeiture of this privilege on account of violation of the terms of a conditional pardon or suspension of sentence by the executive, no such forfeiture can be imposed by the executive under any condition or stipulation inserted in the conditional pardon or order for suspension of sentence. This conclusion finds some support in the reasoning adopted by the Supreme Court of Indiana in deciding the case of *Woodward v. Murdock*, 124 Ind. 439 (24 N. E. Rep. 1047). In that case there was, however, no express condition that on violation of the terms of his parol the prisoner should forfeit the diminution of sentence already earned by good conduct, and the court simply held that on remand after revocation of the parol the prisoner could only be required to serve such portion of his term as remained after giving him credit for such good conduct as was provided by statute. The court, however, says: " The appellant (the prisoner) could not extend the time of his imprisonment by contract with the Governor, any more than he could have become a prisoner in the first instance by contract. It is only by virtue of the judgment of a court of competent jurisdiction that a citizen can be condemned to imprisonment, and, when the time expires for which the sentence runs as given in the judgment, the prisoner is entitled to his discharge."

The judgment of the trial court was correct, and it is AFFIRMED.