(June 27, 1906.)

## In re BERT PROUT.

[86 Pac. 275.]

HABEAS CORPUS—PAROLE OF PRISONERS—CONDITION OF PAROLE—RETURN OF PRISONER—SERVICE OF FULL TERM.

1. The board of pardons is a branch of the executive department of the state government and its powers and prerogatives, as such, are those of granting clemency to convicted prisoners, and it has no power to increase or extend penalties or punishments pronounced by the sentence of a court.

2. The board of pardons has power to parole prisoners upon such terms and conditions as they may see fit, so long as those terms and conditions are neither immoral nor illegal.

3. Conditions attached to a parole or pardon by the board of pardons that are to extend beyond or be performed after the expiration of the term for which the prisoner was sentenced, are illegal and cannot be enforced after the expiration of the term for which the prisoner was sentenced.

4. A prisoner who had been paroled by the board of pardons and thereafter rearrested and returned to the penitentiary is entitled to his discharge at the expiration of the period of time for which he was sentenced by the court, and he cannot be lawfully detained under such sentence for the purpose of serving an additional term equaling the time he was out on parole.

(Syllabus by the court.)

ORIGINAL application for a writ of *habeas corpus.* Writ granted and case heard on return made by the warden of the penitentiary. *Prisoner discharged.*

Carl A. Davis, for Petitioner.

Where a prisoner is released on parole and the term of his sentence is not specifically suspended, it continues to run and expires as it would had he served his term in the manner originally intended. The parole is a change of manner of punishment only and not a suspension of the sentence. (*Woodward v. Murdock,* 124 Ind. 444, 24 N. E. 1047; *West's Case,* 111 Mass. 443.)

The statutes of Idaho provide that before the good time allowed by law is taken from a convict, charges must be made by the warden and sustained by the board of prison commissioners. (Idaho Code, 1901, secs. 5864, 5868.)

It is not shown by the state that any charges were made and sustained against Prout to justify the warden in depriving him of the six months' good time otherwise allowed by law.

J. J. Guheen, Attorney General, and Edwin Snow, for the State.

The parole agreement in this case is in the nature of a conditional pardon. The power to grant conditional pardons is expressly granted to the board by the constitution. (Idaho

Const., art. 4, sec. 7; *Fuller v. State*, 122 Ala. 32, 82 Am. St. Rep. 17, 26 South. 146, 45 L. R. A. 502; *In re Conditional Discharge of Convicts*, 73 Vt. 414, 51 Atl. 10, 56 L. R. A. 658.)

Any condition that is not immoral or impossible to perform is valid. That the prisoner leave the state is a lawful condition attached to a pardon. (*State v. Barnes*, 32 S. C. 14, 17 Am. St. Rep. 832, 10 S. E. 611, 6 L. R. A. 743; *People v. Potter*, 1 Park. Cr. Rep. 47; *State v. Addington*, 2 Bail. (S. C.) 516, 23 Am. Dec. 150.)

AILSHIE, J.—The petitioner was on the eighteenth day of May, 1903, sentenced to serve a term of three years in the state penitentiary for the crime of embezzlement, the judgment providing that the term of imprisonment should commence to run from the date of his delivery to the warden of the penitentiary. He was received at the penitentiary on the twenty-fourth day of May, 1903, and continued upon the service of his sentence until the sixth day of October, 1904, on which date he was released by the board of pardons on parole, under sections 13 and 14 of the act of February 2, 1899 (Sess. Laws 1899, pp. 11, 12). His parole carried with it various and sundry conditions and requirements as to his movements and conduct during his absence from the penitentiary. It required him to remain within the state and within the confines of certain counties therein designated; that he should make a written report to the warden on the first day of each and every month, stating his employment or occupation, the amount of his earnings, and an itemized account of his expenditures, and that such report should be certified by his employer or those for whom he had worked, and that he might be returned to the penitentiary at the will and upon the demand of the board of pardons, and concludes with the following language: "And upon his return he shall serve out the full unserved time of his original sentence, without any commutation of time." The prisoner was returned to the penitentiary on the second day of March, 1905, on the grounds that he had violated the provisions of his parole.

The board ordered his good time credit forfeited, and also the period of four months and twenty-six days that he was out on parole forfeited, and directed that he enter upon the original sentence and serve it in full as though he had never been released. The three year sentence would have expired on May 24, 1906, without giving him any credit for good time; but under the direction of the board his sentence would not expire after his return to prison until the twentieth day of October, 1906. It is now nearly one month over three years since the prisoner was delivered to the warden of the penitentiary, and he applies for his discharge on *habeas corpus*, upon the ground that the term of his sentence has expired, and that neither the warden nor the board of pardons has any legal right to further detain him.

It is contended by counsel for the state that under section 7 of article 4 of the constitution the board of pardons are granted full power and authority to do the acts and things complained of in this case. That section of the constitution provides, among other things, as follows: "The governor, Secretary of State, and attorney general shall constitute a board to be known as the board of pardons. Said board or a majority thereof shall have power to remit fines and for-feitures, and to grant commutations and pardons after conviction and judgment either absolutely or upon such conditions as they may impose in all cases of offenses against the state except treason or conviction on impeachment." Act of February 2, 1899 (Sess. Laws 1899, pp. 11, 12), which prescribes the manner and method and conditions for paroling prisoners, provides, in section 13 thereof, "that such convict while on parole shall remain in the legal custody and under control of the board of pardons, and subject at any time to be taken within the inclosure of the said penitentiary, and full power to retake and reimprison any convict so upon parole is hereby conferred upon said board, whose written order certified by the warden shall be sufficient warrant for all prisoners named in it."

It is urged by the attorney general that the board of pardons may impose any conditions whatever upon the granting of a parole. That proposition is correct, and is the well settled and uniform rule of law as adopted both in this country and in England, and was, indeed, the rule of the common law. (4 Blackstone's Commentaries, 401; *Arthur* v. *Craig*, 48 Iowa, 264, 30 Am. Rep. 395; *United States v. Wilson*, 7 Pet. 150, 8 L. ed. 640; *Ex parte Wells*, 18 How. 307, 15 L. ed. 421; *State v. Smith*, 1 Bail. (S. C.) 283, 19 Am. Dec. 679; *Lee v. Murphy*, 22 Gratt. 789, 12 Am. Rep. 563; *Ex parte Marks*, 64 Cal. 29, 49 Am. Rep. 684, 28 Pac. 109; *Kennedy's Case*, 135 Mass. 48; *State v. Wolfer*, 53 Minn. 135, 39 Am. St. Rep. 582, 54 N. W. 1065, 19 L. R. A. 783; 24 Am. & Eng. Ency. of Law, 2d ed., 566.) This rule is subject to the same restrictions which attach to the official acts and conduct of all public officials, namely, that they must not be immoral or illegal. There can be no doubt but that under the constitution and statute as above cited the board of pardons may, upon the granting of a pardon, commutation or parole, attach such conditions as they see fit, so long as they are not immoral, illegal or impossible of performance, provided they are to be kept and performed or complied with during the term for which the prisoner was sentenced by the judgment of the court. Under our constitution it is the duty and prerogative of the legislative department to define crimes and fix the maximum and minimum penalty that may be imposed for the commission thereof. It is the duty of the judicial department to try offenders against those laws, and, upon conviction, to sentence them under the statute. Under the laws of this state, there is no such thing as an indefinite or indeterminate sentence as is provided for in many of the states from which authorities have been cited by the attorney general. In this state the sentence and judgment of the court must be specific, certain and definite. The board of pardons belongs to the executive department of the state, and its privilege and prerogative is that of granting clemency. It is a board of clemency rather than a punitive body. Instead of pronouncing judgment and sentence and

imposing punishment, its prerogative and authority is that of forgiving offenses and remitting penalties—wiping out judgments and sentences of conviction either in whole or in part. Whenever such board undertakes to increase or extend the penalty or punishment imposed upon a convict by a decree of court, they at once pass beyond the realm of their jurisdiction and authority, and infringe upon the judicial power of the state. It is urged, however, that this imprisonment does not amount to an increase or extension of the judgment of the court, for the reason that the prisoner was at large and enjoying his liberty during the four months and twenty-six days that he was out on parole, and that the sentence was during that time merely suspended. It seems to us that that contention is fully answered by section 13 of the statute above quoted, wherein it provides that the prisoner shall be under the control of the board of pardons, and shall report to the warden from time to time. It was also required, as we have heretofore seen, by the terms of the parole, that he should remain in a certain designated territory and constantly report his movements, employment, etc., to the warden. This contention is very fully and ably answered by the court in *Woodward v. Murdock*, 124 Ind. 439, 24 N. E. 1047, where the chief justice says: "During the time that he was out on parole he was not a free citizen; he was, as we have seen, still a prisoner, and notwithstanding his prison bounds were not so contracted as were the prison bounds of the insolvent debtor, at the time our laws recognized imprisonment for debt, still he was given prison bounds. He was not permitted to come into the state of Indiana. All the consequences of the judgment were upon him, except that he had leave of absence from the prison. As the appellant was a prisoner absent from the prison by proper authority, under no view of the case, in our opinion, could his imprisonment be continued longer than the period for which he was sentenced less his credit for good time. But if the appellant is to be regarded as having been a free man during the time he was out of prison on parole, he was entitled to his release at the time this pro-

ceeding was instituted. It was only by virtue of the judgment of the Marion criminal court that the appellant was held as a prisoner; it by its very terms only condemned him for five years from its date, less any time for which, under the law, he might be entitled to credit." (*West's Case,* 111 Mass. 444.)

Some of the cases cited by counsel for the state contain dicta to the effect that there is no limit to the conditions that may be imposed by the pardoning power upon paroling or pardoning a convict. But those statements are in most cases made in the consideration of questions other than the one presented in this case.

In *Fuller v. State,* 122 Ala. 32, 82 Am. St. Rep. 17, 26 South. 146, 45 L. R. A. 502, it was held by the Alabama court that the statute of that state in express terms provided that in case the prisoner should be returned he should enter upon the service of his original sentence the same "as though no parole had been granted him."

In *re Conditional Discharge of Convicts,* 73 Vt. 414, 51 Atl. 10, 56 L. R. A. 658, there is an extended discussion of this question and the citation of many authorities, but a careful examination of that case shows that the statute of Vermont provided for what the court of that state designates an "indeterminate" sentence. Upon conviction of the accused, the trial court seems to merely pronounce the maximum and minimum term of imprisonment, and after the prisoner has served the minimum term, it is left to the discretion of the pardoning power as to when he shall thereafter be discharged prior to serving out the maximum sentence.

*Conlon's Case,* 148 Mass. 168, 19 N. E. 164, is not in point here, for the reason that at the time that case was decided there was a statute in Massachusetts providing that in case of the return of a prisoner who had been paroled that "in computing the period of his confinement, the time between his release upon said permit and his return to the reformatory shall not be taken to be any part of the term of the sentence."

In *People v. Cummings*, 88 Mich. 249, 50 N. W. 310, 14 L. R. A. 285, the court had under consideration a statute authorizing an indeterminate sentence where the court could merely pronounce the maximum and minimum penalty, and the remainder was left to the determination of the pardoning power. The court held such an act unconstitutional as being an infringement upon the judicial power of the state.

It certainly cannot be said that a man is a free man enjoying the liberty and freedom usually accorded other citizens when he is compelled to confine his movements to a specified locality and to report his conduct, his daily labor, his earnings and expenditures from time to time to a prison official, and is subject and liable at any day—and without notice, or the right of trial or the right to apply to the courts—to be taken to the state penitentiary and there imprisoned and confined at the will of designated officials. Such a view of the constitution and statute would amount to turning what the framers of the constitution intended to be a board of clemency into a board of punishment. It seems to us that in maintaining such a view we would lose sight of the purposes of the parole statute. That statute was never intended as a vindictive or punitive statute, but rather as a reformatory measure. It was intended that a prisoner who had served out one-third of his term and had made a good record as a prisoner might be put on his good behavior and word of honor, and that so long as he might keep his promise he could go free, and that whenever he violated the terms and conditions thereof he might be subject to return to serve out the remainder of the term for which he was sentenced. We find that some of the authorities have entered into many refinements and nice distinctions in the definition of pardon, commutation and parole. We think it clear, however, that whatever distinction may be drawn, and whatever definition may be given, that they are all acts of clemency, and are grants emanating from the executive department of the state without compensation or consideration from the recipient. It appears equally

clear to us that a pardon, either absolute or conditional, is not effective until received and accepted. In so far as a clemency has once been received and enjoyed, it would seem impossible to recall or revoke it. The revocation could only extend to that part not yet enjoyed. Pardon or executive clemency is a gift. One who promises to make a gift may keep his promise in whole or part or he may decline entirely, but after the delivery he cannot recover the thing given, and even if he should again come into possession of it he cannot retain it. (1 Page on Contracts, sec. 281.) He may decline at any time he pleases to give any more, but that fact does not devest the donee of title to that which he has already received. In that view of the case, while the pardoning board would have unquestionable authority to recall their parole and return the prisoner at any time, it seems equally clear that they cannot wipe out or obliterate the clemency the prisoner has already received and enjoyed. It would seem strange if they can turn round and punish him the same length of time that he has been enjoying their clemency.

The term for which the prisoner was sentenced having expired, the warden has no authority for his further detention. It is therefore ordered and adjudged that the prisoner be forthwith discharged.

Stockslager, C. J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by a majority of the court. I shall not discuss whether a parole is a conditional pardon or not, as I do not think that question very material here, and the only question of importance in this case is, whether the board of pardons exceeded its powers in imposing in the parole of the petitioner the following provision—"and upon his return he shall serve out the full unserved term of his original sentence without any commutation of time." Is that a condition that may be imposed by said board? In section 7 of article 4 of the constitution of Idaho, we find, among others, the following provision: "Said board, or a majority thereof, shall have

the power to remit fines and forfeitures, and to grant commutations and pardons after conviction and judgment, either absolutely or upon such conditions as they may impose, in all cases of offenses against the state except treason or conviction on impeachment. The legislature shall by law prescribe the sessions of said board and the manner in which application shall be made and regulate the proceedings thereon.''

It is conceded by the majority, under certain authorities cited in the majority opinion and under our constitution and statute, as follows: ''There can be no doubt but that under the constitution and statute as above cited, the board of pardons may, upon the granting of a pardon, commutation or parole, attach such conditions as they see fit so long as they are not immoral, illegal or impossible of performance, provided they are to be kept and performed or complied with during the term for which the prisoner was sentenced by the judgment of the court.'' They then proceed to hold that the above-quoted provision of the parole agreement was illegal because, as I understand them, they claim it increases the term of imprisonment of the petitioner. I do not maintain that the board would have power or authority, under said provision of the constitution, to make a valid parole agreement with a prisoner who had been convicted and sentenced to imprisonment for a term of years, that in case he violated his parole agreement, he might be arrested and hung for the violation of such agreement. But what I do maintain is, that the board has authority to require the convict to serve out the unexpired part of his term, in case he violates his parole; that he shall have no credit for the time he was out on parole, but must serve his entire term, in case of a violation thereof. As I view it, that condition is not immoral, impossible, nor is it illegal, and is not in violation of any provision of our statutes. I think it a very reasonable provision in such an agreement and one authorized by said provision of our constitution. The people of this state have spoken through the state constitution to the board of pardons, and said to them that in granting commutations, ''you

may grant them absolutely or upon such conditions as you may impose." In commenting upon *Fuller v. State,* 122 Ala. 32, 82 Am. St. Rep. 17, 26 South. 146, 45 L. R. A. 502, my brothers say: "That the statute of that state in express terms provided that in case the prisoner should be returned, he should enter upon the service of his original sentence the same 'as though no parole had been granted.' " And in commenting on *Conlon's Case,* 148 Mass. 168, 19 N. E. 164, they say that that case is not in point here, for the reason that at the time the case was decided, there was a statute in Massachusetts providing that in case of the return of a prisoner who had been paroled there, "in computing the period of his conviction, the time between his release upon said permit and his return to the reformatory shall not be taken to be any part of the term of the sentence." Thus the comments of my associates upon those cases would indicate that the legislature had the power to impose the terms there stated; but that as the legislature of this state had enacted no statute authorizing that condition in the parole agreement, the board did not have the power to impose it. I recognize the fact that this state has no statute in that regard, such as Alabama and other states have, where the legislatures of the several states have provided in express terms that in case a prisoner violates the terms of his parole, he may be returned to prison and serve out his sentence "as though no parole had been granted him." Can it be possible that the legislature has greater power in this state in prescribing conditions on which a prisoner may be paroled than the people authorized by the constitution and conferred on the board of pardons? The people of the state have spoken directly to the board of pardons and said, you may grant commutation and pardons after conviction and judgment, either absolutely or upon such conditions as you may impose, and the legislature shall, by law, prescribe the sessions of said board and the manner in which applications for pardon shall be made, and may regulate the proceedings thereon. That is the extent of legislative power. We have in section 7, article 4 of

the constitution a power imposed on the·board of pardons to grant parole upon such conditions as they may impose, and in the same section the people have said to the legislature, you shall prescribe the sessions of said board and the manner in which application shall be made and regulate the proceedings thereon. The people by their constitution have prescribed in that section what the legislature may do in regard to paroles and pardons, and by provisions of said section have given the legislature certain authority therein and have prohibited the legislature from interfering in any manner with the "conditions" that may be imposed by said board in granting paroles. It is declared in section 2, article 1 of the constitution that all political power is inherent in the people, and my brothers, by their conclusions in this matter, would hold that, regardless of said provisions of the constitution, the legislature of this state has the power to limit the board of pardons in imposing conditions on paroled prisoners. They thus hold that the creature, the legislature, has greater power than the people, the creator. I cannot concur in that conclusion. So far as I have investigated, the constitutions of none of the states from which decisions have been cited have a similar provision in their constitution as said section 7, article 4 of the constitution of Idaho, and if they have, the acts of the several legislatures of those states, giving the pardoning power authority that it had under the constitution, would only be a work of supererogation, and not void. We find in said section 7 a grant of power to the board of pardons, and we find in the same section a prohibition on the legislature from prescribing in any manner the conditions that may be imposed by the board on the paroled prisoner. In the opinion of the judges in the *Matter of the Conditional Discharge of Convicts*, 73 Vt. 414, 51 Atl. 10, 56 L. R. A. 658, the court said: "The authorities seem to agree that, when a convict fails to perform the conditions of his pardon, he is liable to be remitted to his original sentence. This is the only logical result, for by nonperformance of the conditions the pardon becomes void, and the prisoner is in the

same state in which he was at the time his pardon was granted.'' Can it be possible that the authorities agree upon that proposition and have not held such a condition of the parol illegal? It seems they have. In those states the sentence and judgment in a criminal case must be specific, certain and definite, the same as in our own state. A parole is not an increase of the sentence. In the Vermont case above cited, the court refers to the case of *Arthur v. Craig*, 48 Iowa, 264, 30 Am. Rep. 395, where the conditions were that during the remainder of the convict's term of sentence he should refrain from the use of intoxicating liquors, use all proper exertion for the support of his mother and sister, and not be convicted of any criminal offense against the laws of the state, with the further condition that upon the failure to comply therewith, he should be subjected to summary arrest upon the warrant of the governor, and thereon be remitted to his former custody to serve the remainder of the term of his sentence. The Vermont court said: ''Reference might be made to pardons containing certain other and different conditions, but it is unnecessary. In the light of the authorities, what good reason can be given why the governor, under his constitutional powers, may not grant a parole with all the conditions intended by the law to be imposed by the board of prison commissions with like effect?'' That question is answered by holding that there is no good reason why those conditions may not be imposed. There the pardoning board had the authority to impose that condition, and the question was as to whether the governor had the same power. But my brothers would say that Iowa has a statute authorizing those conditions. Can an illegal, immoral or impossible condition be made effective by legislative enactment? If the legislature has the authority by statute to authorize the board to impose these conditions, the people themselves certainly have the power, through their constitution, to grant that power to the board of pardons. Granted that the people did not intend by the said provision of the constitution to give the board of pardons power to impose on paroled convicts illegal, immoral, or impossible conditions; the condition in the par-

don under consideration is not illegal, immoral or impossible, and therefore the pardoning board had the right and authority granted them direct from the people to impose it. The prisoner should be remanded.