ANDERSON, Warden of United States Penitentiary, v. WILLIAMS. SAME v.. CORALL. SAME v. WIKE. *

(Circuit Court of Appeals, Eighth Circuit. February 27, 1922.)

Nos. 5831–5833.

1. Pardon ⟨⟩10—Parole cannot be revoked after expiration of term of sentence.
  Under Act June 25, 1910, §§ 3–5 (Comp. St. §§ 10537–10539), providing that the warden may, within term of sentence, issue a warrant for arrest of a paroled convict, and section 6 (Comp. St. § 10540), permitting revocation of parole, and providing that time out on parole shall not diminish time of sentence, the parole cannot be revoked after expiration. of term of sentence served partly in prison and partly on parole; section 6, excluding time on parole from computation, applying only where parole was revoked before expiration of sentence.

2. Statutes ⟨⟩241(1)—Governing should be reasonably construed, giving convicts benefit of ambiguity.
  Statutes which condition the liberties of accused or convicted persons must receive a rational, sensible construction in preference to one that is unreasonable and probably not intended by the Legislature, and if such statutes are ambiguous or their meaning is uncertain, the accused or convicted should receive the benefit of the doubt.

3. Pardon ⟨⟩9—Parole does not suspend sentence.
  The parole of a prisoner by the board of parole under Act June 25, 1910. (Comp. St. §§ 10535–10544), is not a suspension of the sentence, but merely substitutes for confinement in the penitentiary confinement within the bounds specified by his parole outside of the penitentiary, still subject to the legal custody of the warden.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Separate proceedings in habeas corpus by Harry L. Williams, by Arthur Corall, and by Fred C. Wike, each against August V. Anderson, as Warden of the United States Penitentiary at Leavenworth,. Kan. From orders directing the Warden to discharge the petitioners from confinement in the penitentiary, the Warden appeals. Affirmed..

L. S. Harvey, Asst. U. S. Atty., of Kansas City, Kan. (Fred Robertson, U. S. Atty., of Kansas City, Kan., on the brief), for appellant.

Turner W. Bell, of Leavenworth, Kan., for appellee Williams.

Lee Bond, of Leavenworth, Kan., and Harold Medill, of Independence, Kan., for appellees Corall and Wike.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. These cases are presented here by appeals of the warden of the United States penitentiary at Leavenworth, Kan., from orders of the United States District Court for the District of Kansas, upon petitions for writs of habeas corpus, and responses of the warden directing him to discharge the petitioners, the appellees here, from confinement in that penitentiary. They present this question: When one has been convicted and sentenced by a federal court for a violation of a federal law to confinement in the penitentiary for a definite term—for example, three years—has been confined in the·

---

* ⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes..
*Certiorari granted 257 U. S. —, 42 Sup. Ct. 590, 66 L. Ed. —.

penitentiary and has served under that sentence for several months, has been paroled and the term of his sentence, three years from his delivery into the penitentiary, has expired, may the board of parole, after the expiration of the three years of sentence, lawfully revoke the parole and authorize the warden to confine him in the penitentiary for a time equivalent to the difference between the time he was actually confined in the penitentiary before his parole and the time he would have been thus confined under his sentence if he had not been paroled? The court below ordered the discharge of the petitioners because it was of the opinion that this question should be answered in the negative.

The pertinent provisions of the statutes appear in the Act of June 25, 1910, 36 Stat. 819, 820 (U. S. Comp. Stat. §§ 10537–10540). Section 10537 (section 3 of the act) provides that if, from a report of the proper officers of the prison or on the application by the prisoner for a release on parole, the fact that there is a reasonable probability that such applicant will live and remain at liberty without violating the laws, appears to the board of parole, and if in the opinion of the board such release is not incompatible with the welfare of society—

"then said board of parole may in its discretion authorize the release of such applicant on parole, and he shall be allowed to go on parole outside of said prison, and, in the discretion of the board, to return to his home, upon such terms and conditions, including personal reports from such paroled person. as said board of parole shall prescribe and to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled, and until the expiration of the term or terms specified in his sentence, less such good time allowance as is or may hereafter be provided for by act of Congress; and the said board shall, in every parole, fix the limits of the residence of the person paroled, which limits may thereafter be changed in the discretion of the board."

Section 10538 (section 4 of the act) and section 10539 (section 5 of the act) provide that, if the warden of the penitentiary shall have reliable information that the prisoner has violated his parole, then said warden "at any time within the term or terms of the prisoner's sentence," may issue his warrant to any officer hereinafter authorized to execute the same for the retaking of such prisoner, and that any officer authorized to serve criminal process within the United States to whom such warrant shall be delivered, is authorized to execute the warrant by taking the prisoner and returning him to the penitentiary. Section 10540 (section 6 of the act) provides that, at the next meeting of the board of parole held at the penitentiary, after the issuing of the warrant, the board shall be notified thereof and if the prisoner has been returned to the penitentiary—

"he shall be given an opportunity to appear before said board of parole, and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parol so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

In each of the cases under consideration the term of the sentence was a specified time from the commencement of the imprisonment, and in each of them the prisoner was paroled within that time, and remained

cut of the penitentiary under the parole until after that time had expired before he was returned to the penitentiary, before his parole was revoked and before he was given an opportunity to appear before the board of parole in opposition to its revocation. For example, the appellant Williams, sentenced to confinement in the penitentiary for five years, commenced serving his sentence on November 18, 1912. His five years expired November 18, 1917. On December 18, 1914, he was paroled. On June 10, 1919, he was returned to the penitentiary and on September 12, 1919, the board of parole revoked his parole.

[1] Counsel for the warden argue that the legal effect of the provisions of the Parole Act is to authorize the board of parole, at any time after the expiration of the time of the sentence, a part of which has been served during the parole, to revoke that parole for a violation of its condition and to confine the prisoner in the penitentiary for the length of time he served under the parole. But section 3 of the act provides that the board shall in every parole "fix the limits of the residence of the person paroled," that he shall be permitted to go on parole outside of the prison—

'upon such terms and conditions, including personal reports from such paroled person, as said board of parole shall prescribe, and to remain, while on parole, in the legal custody and under the control of the warden of such prison, from which paroled, and until the expiration of the term or terms specified in his sentence, less such good time allowance as is or may hereafter be provided for by act of Congress."

As these appellees served parts of their sentences in the penitentiary and the remainders thereof under the authorized amelioration of their sentences wrought by their paroles, but still in the legal custody and under the control of the warden, and all this time subject to the revocation of their paroles, it is difficult to resist the conclusion that as soon as the times prescribed by their sentences had passed, the authority of the board to revoke their paroles and again to cause them to be imprisoned under their sentences, had also passed.

Counsel for the warden concede that this would be the legal effect of the act if the provisions of section 3 on this subject stood alone, but they cite section 6, which declares that after a warrant for the return of a paroled prisoner has been issued by the warden at any time within the term or terms of the prisoner's sentence (section 4), and after he has been returned to the prison, and after he has been given an opportunity to appear before the board, the latter—

"may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

They then argue that this section 6, when read with section 3, empowers the board at any time, even if a prisoner has served the time of his entire sentence partly by confinement in the prison and the remainder by service under the sentence as modified by the parole, to revoke the parole and compel him to serve by confinement in the prison that part of his sentence which he served under the parole. In sup-

port of this contention they have cited, and the court has examined Ex parte Marcil (D. C.) 213 Fed. 990, 992, wherein the prisoner was sentenced to imprisonment for five years, was paroled, his parole was revoked within the five years, and the court held that under section 6 he must serve the remainder of the sentence originally imposed without any deduction on account of the good time he had earned before he was paroled. But in that case the revocation was prior to the expiration of the term of five years from the commencement of the imprisonment, and conceding the soundness of the decision, it does not determine or indicate that the board of parole had any authority to take such action after the expiration of the five years. Dolan's Case, 101 Mass. 119, in which the holding was that a prisoner sentenced to confinement for four years, who escaped and remained at large for nearly a year, during which time the four years expired, had not satisfied the sentence of the court and must serve in prison that part of the four years which passed while he was at large. But there is no analogy between the rights of a prisoner who escapes from prison and remains free during the part of the term of his sentence and one who serves a part of the term of his sentence in the prison and the remainder out of the prison in the legal custody and control of the warden under a parole. Redman v. Duehay, 246 Fed. 283, 159 C. C. A. 13; Morgan v. Adams, 226 Fed. 719, 141 C. C. A. 475; Miner v. United States, 244 Fed. 422, 157 C. C. A. 48, 3 A. L. R. 995; Morgan v. Ward, 248 Fed. 691, 160 C. C. A. 591. And none of the decisions or opinions in these cases either determine or treat of the question at issue in the case at bar.

By the Act of June 25, 1910, the Congress granted to the board of parole the authority during the term of the sentence of imprisonment adjudged by the court (1) to revoke an order of parole it had made, and (2) to terminate such parole, and it enacted that the effect of such revocation and termination should be, that the prisoner should serve the remainder of the sentence originally imposed, and that the time the prisoner was out on parole should not be taken into account to diminish the time for which he was sentenced. That the Congress did not intend by this act to vest and did not vest in the board the power to revoke such a parole after the parole and the term of imprisonment had expired, and thereby to enable it at any time, perhaps years after the termination of both, to inflict upon the prisoner another term of confinement in the penitentiary for a length of time equal to that part of his sentence which he served under the parole, seems clear from the following considerations:

The Congress provided in section 3 of the act that the board might grant a parole of a prisoner which would allow him to go on parole outside the prison, and "to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled, and until the expiration of the term or terms specified in his sentence, * * *" but not after the expiration of such sentence. The Congress provided, by section 4 of the act, that, if the warden of the prison should have information that the paroled prisoner had violated his parole, "then said warden, at any time within the term or terms of

the prisoner's sentence," but not after the expiration of such term or terms, "may issue his warrant * * * for the retaking of such prisoner." Section 6 provides that on the return of the prisoner under such warrant, and after an opportunity for the prisoner to appear before the board, it "may then or at any time in its discretion revoke the order and terminate such parole," and that, "if such order of parole shall be revoked and the parole so terminated," but not otherwise, or on any other condition, "the said prisoner shall serve the remainder of the sentence originally imposed," without any allowance on account of the time he served his sentence under the parole. But when, as in the cases in hand, the terms of the sentences and the paroles had expired long before any hearings concerning or orders of revocation of the paroles, the latter, having already terminated, could not be terminated by orders of revocation or termination, and the prisoners could not fall under the provision of section 6 that where the paroles were terminated by the orders of revocation pursuant to the provisions of the act, the prisoners should serve the remainders of their original sentences without any allowance for the terms they served under their paroles.

[2] Cardinal rules of interpretation of statutes, which condition the liberties of accused and convicted persons, are that such statutes must receive a rational, sensible construction, in preference to one that is unreasonable and probably not intended by the legislative bodies which enacted them, and that their obvious natural meaning should be preferred to a recondite, strained or improbable sense, and that if such statutes are ambiguous or their meaning is uncertain the accused or convicted should receive the benefit of the doubt. The Act of June 25, 1910, contains no clear or expressed grant of authority to the board of parole to revoke or terminate a parole after the sentence of the prisoner paroled and the parole itself have expired. A construction of this act to the effect that it empowered the board of parole at any time, perhaps years after the expiration of the terms of the sentences of paroled prisoners to revoke their paroles and subject them to imprisonment for times equivalent to the parts of their terms which they served under their paroles, would be an unreasonable one, it would be one that probably never was considered or intended by the Congress. It is not the obvious, natural meaning of the terms of the act, but a concealed, strained, unreasonable interpretation of it, which cannot fairly be deduced from the terms of the act, its object, and the circumstances in which it was enacted, and it is one which this court will hesitate long to impose upon it.

[3] It is suggested and stated by counsel for the warden that the terms of the sentences of these appellees did not really expire when they had respectively served the entire terms of their sentences, parts of them in the penitentiary and the remainder of them under their paroles, that the paroles suspended the sentences, and that consequently the revocations of these paroles, although after the expiration of the terms during which their respective fixed sentences ran, were nevertheless before the expirations of the sentences. This contention, however, fails to commend itself to our judgment. A parole of a prisoner by the board

of parole under the Act of June 25, 1910, is not a suspension of a sentence. On the other hand, it is a substitution during the continuance of the parole, of a lower grade of punishment, by confinement in the legal custody and under the control of the warden within the specified prison bounds outside the prison, for the confinement within the prison adjudged by the court. It is the authorized substitution during the existence of the parole through the clemency of the board of a lighter punishment for that originally prescribed by the judgment. But the prisoner is not free of his sentence while he is out of the prison under the parole. He is still serving his sentence. By virtue thereof, he is still confined within the specified bounds outside of the prison, still in the legal custody of the warden, and subject to all the terms of the sentence of the court of which he is not expressly relieved, and the time of his confinement under the parole runs and must be allowed in his favor as long as his parole is not lawfully revoked to the same extent as it would have run and have been allowed if he had been actually confined in the penitentiary during that time. Woodward v. Murdock, 124 Ind. 439, 24 N. E. 1047, 1048; In re Prout, 12 Idaho, 494, 86 Pac. 275, 276, 277, 5 L. R. A. (N. S.) 1064, 10 Ann. Cas. 199; People v. Homer, 107 Misc. Rep. 677, 177 N. Y. Supp. 482.

No error or mistake has been discovered in the negative answer given by the court below to the question involved in this case and stated in the opening of this opinion, nor in the orders challenged by these appeals, and they must therefore be and are affirmed.