### CROOKS v. SANDERS, SUPT. PENITENTIARY

#### (115 S. E., 760)

1. PARDON—PAROLE CANNOT BE REVOKED AFTER EXPIRATION OF SEN-
TENCE.—Though the power to pardon, conferred upon the Governor
by Const., Art. 4, § 11, is practically unrestricted, it is limited to
the remitting or abrogation of penalties in whole or in part, and does
not authorize the Governor to impose punishment which has not
been imposed by a Court of competent jurisdiction.

2. PARDON—CONDITIONAL PARDON SUSPENDS RUNNING OF SENTENCE.—
An ordinary conditional pardon, conferring upon the prisoner all
the rights of a free citizen on condition that the remainder of
his life he continue of good behavior, merely suspends the running
of the sentence, and leaves the unexpired portion thereof subject
to enforcement upon breach of condition.

3. PARDON—GOVERNOR CAN GRANT CONDITIONAL PARDON WITHOUT
SUSPENDING RUNNING OF SENTENCE.—The broad pardoning power
conferred upon the Governor by Const., Art. 4, § 11, empowering
him, if he sees fit, to grant a conditional pardon that does not have
the effect of suspending or holding in abeyance the convict's sen-
tence.

4. PARDON—PAROLE IS TO BE LIBERALLY CONSTRUED IN FAVOR OF PRIS-
ONER.—Where the intention of the parties is doubtful, a parole
granted to a convict is to be construed most beneficially to him and
most strongly against the Sovereign power, since a pardon is an
act of grace and limitations upon its operation should be strictly
construed.

5. PARDON—PAROLE CONSTRUED IN LIGHT OF STATUTE.—Even though
the legal efficacy of a parole issued by the Governor does not de-
pend on statutory authority, it is to be presumed that the Gov-
ernor, in using the word "parole," used it in the same sense it was
used by the makers of Criminal Code 1912, § 988, providing that,
in any case that may be deemed proper by the Governor, he may
suspend sentence or parole any prisoner, in which statute the
term parole must be given a meaning different from that of sus-
pending sentence, otherwise it would be redundant and tautological.

NOTE—On power to impose in pardon conditions extending beyond
term of sentence see notes 5 L. R. A. (N. S.), 1064; 16 L. R. A.
(N. S.), 304; 20 L. R. A. (N. S.), 337, and 26 L. R. A. (N. S.), 110.

As to suspension of sentence for good behavior see note 14 L. R. A.,
285.

6. PARDON—"PAROLE" DOES NOT SUSPEND RUNNING OF SENTENCE.—
   The word "parole," when construed in accordance with its etymology,
   excludes the meaning of a suspended sentence, and implies that
   the prisoner on parole is still in custody, though released from the
   bounds of prison.

7. PRISONS—CONVICT ON PAROLE IS ENTITLED TO CREDIT FOR GOOD BE-
   HAVIOR.—A convict released from the bounds of prison on parole,
   which did not suspend the running of his sentence, is entitled to
   the credit for time on account of good behavior, allowed by Act
   February 14, 1914 (28 Stat. at Large, p. 617), so long as his con-
   duct remains good.

8. PRISONS—FACTS HELD NOT TO SHOW FORFEITURE OF GOOD BEHAVIOR
   TIME WHILE ON PAROLE.—Where petitioner for *habeas corpus* to
   secure his release from custody after parole was revoked for mis-
   conduct, alleged that his time expired on the date it would have
   expired if he had been entitled to his credit for good behavior,
   thereby impliedly alleging he was entitled to such credit, and there
   was no showing his conduct was not good prior to the revocation of
   his parole five months after the expiration of his sentence, he is
   entitled to the credit for good behavior, so that his sentence had
   expired before the parole was revoked.

Original application by Grover Crooks against A. K. Sanders, as Superintendent of the State Penitentiary, for *habeas corpus* to secure the release of petitioner from confinement in the Penitentiary. Confinement adjudged to be without authority and petitioner remanded to the custody of a Sheriff under a Magistrate's commitment.

*Mr. B. B. Evans,* for petitioner, cites: *Constitutional rights:* Const. S. C. 1895, Art. I, Sec. 5; Id., Art. I, Sec. 17. *Power of Governor:* Id., Art. 4, Sec. 11; Crim. Code 1912, Sec. 988. *Suspended sentence:* 87 S. C., 466; 107 S. C., 413.

*Mr. C. T. Graydon* cites: *Conditional paroles:* 1 Strob., 347; 1 Bail., 286; 2 Bail., 636; 1 McC., 176; 38 S. C., 14. *Conditional pardon different from parole:* 29 L. R. A. (N. S.), 357; Ann. Cas. 1916A, 146; Ann. Cas. 1917A, 1225. *Cases contra, but based on statutes:* 122 Ala., 32; 73 Vt., 414; 148 Mass., 168; 88 Mich., 249; 8 A. L. R., 901. *Time elapsing on parole counts on sentence:* 16 L.

R. A. (N. S.), 304; 92 Va., 974; 5 L. R. A. (N. S.), 1064; 124 Ind., 439; 89 Wis., 354; 111 Mass., 443; 124 Iowa, 569.

*Messrs. Sam'l M. Wolfe, Attorney General,* and *John M. Daniel, Assistant Attorney General,* for the respondent.

November 20, 1922.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The petitioner, Grover Crooks, seeks a writ of *habeas corpus* to secure his release from the custody of the Superintendent of the State Penitentiary. On November 10, 1916, said petitioner, under indictment for assault and battery with intent to kill, was convicted in the Court of General Sessions for Oconee County, and sentenced by the presiding Judge to "Be confined upon the public works of Oconee County, or in the State Penitentiary, at hard labor for a term of six years." Pursuant to the terms of that sentence, Crooks was committed to the State Penitentiary and served therein until December 22, 1921, when he was paroled "during good behavior" by his Excellency, R. A. Cooper, Governor of South Carolina. On September 13, 1922, his Excellency, Wilson G. Harvey, Governor, by executive order, revoked the parole of the said Grover Crooks and recommitted him to the State Penitentiary, where he had since been and is now confined by virtue of that order. Petitioner avers that his imprisonment is "without legal cause or warrant."

That averment is based primarily upon the contention that the parole granted by Governor Cooper, under date of December 22, 1921, did not have the force and effect of holding in abeyance or suspending the running of the prisoner's sentence. Predicated upon that proposition is the further contention that, at the time of the attempted revocation of said parole on September 13, 1922, the petitioner's sentence had expired by operation of

law, and that there was then no outstanding and unsatisfied judgment of a competent Court under which he could be lawfully remanded to prison by executive authority. In his return the respondent states that the recommitment of the petitioner to his custody, as Superintendent of the State Penitentiary on September 13, 1922, was accompanied by written advices from the Governor to the effect that the prisoner was recommitted "to serve his sentence." If, at the time of such reimprisonment, there was no sentence to serve; that is, if at that time the judgment of the Court of General Sessions of Oconee County had been fully executed and satisfied in contemplation of law by the petitioner's service of the sentence originally imposed, it would seem clear that he could not be lawfully reincarcerated by virtue of an expired sentence. While the power to pardon conferred upon the Governor by the Constitution (Sec. 11, Art. 4) is practically unrestricted, no authority to pronounce judgment and sentence or to impose punishment is thereby conferred upon, or otherwise vested by law in, the Chief Executive of the State. His prerogative is that of forgiving offenses and remitting penalties, of abrogating in whole or in part judgments of conviction and sentences imposed by the judicial department of the government. The foregoing propositions, as we understand, are not controverted by the Attorney General, appearing for the respondent in this proceeding. But it is contended on behalf of the State that the effect of the parole granted by Governor Cooper was merely to suspend the sentence of the prisoner and to hold the unexpired portion thereof in abeyance, subject to enforcement at any time at the discretion of the Governor for a breach of the condition subsequent attached to the parole. Upon the validity of that contention is rested the lawfulness of the petitioner's present imprisonment.

It is apparent that the determination of the question thus presented turns upon the construction and interpretation of the order of parole granted by Governor

Cooper on December 22, 1921. That order, after reciting the facts as to the crime for which that prisoner was convicted and sentenced to a term of six years, proceeds in the following language:

"Now, know ye, that for divers good causes and considerations me hereunto moving, I have thought fit to *parole* and by these presents do *,parole,* during *good behavior,* the said *Grover Crooks.*"

The words· italicized are those inserted in writing or typewriting in the printed form.

If this grant of executive clemency is to be construed as an ordinary conditional pardon, conferring upon the prisoner all the rights, privileges, and immunities of a free citizen, subject only to the condition that for and during the remainder of his life he continue of good behavior, then the effect thereof was merely to suspend the running of the sentence and to leave the unexpired portion thereof subject to enforcement upon breach of the condition. Where a pardon is granted upon any condition subsequent that is not immoral, illegal, or impossible of performance, and is accepted by the convict upon those terms, for breach of the condition or conditions at any time thereafter the pardoned prisoner may be lawfully arrested and required to serve out the unexpired portion of his suspended, but still potent, sentence. The foregoing propositions are not open to question under the prior decisions of this Court. *State v. Fuller,* 1 McCord, 178; *State v. Smith,* 1 Bailey, 283; 19 Am. Dec., 679; *State v. Addington,* 2 Bailey, 516; 23 Am. Dec., 150; *State v. Chancellor,* 1 Strob., 347; 47 Am. Dec., 557; *State v. Barnes,* 32 S. C., 14; 10 S. E., 611; 6 L. R. A., 743; 17 Am. St. Rep., 832; *State v. Abbott,* 87 S. C., 466; 70 S. E., 6; 33 L. R. A. (N. S.), 112; Ann. Cas. 1912B, 1189; *State v. Charles,* 107 S. C., 413; 93 S. E., 134.

Neither can it be doubted that under the broad power 3, 4 "to grant reprieves, commutations and pardons after conviction (except in cases of impeachment), in such

manner, on such terms and under such restrictions as he shall think proper" (Const. 1895, Art. 4, § 11), the Governor may, if he sees fit, exercise executive clemency in the nature of a conditional pardon that does not have the effect of suspending or holding in abeyance the convict's sentence. Concretely, it was entirely within the scope of Governor Cooper's pardoning power, as conferred by the Constitution, to grant Grover Crooks such a permit to go at liberty as would run concurrently with and not suspend his sentence. May the "parole during his good behavior" issued by the Governor on December 22, 1921, be reasonably and legitimately so construed? While the object of the Courts in construing instruments of this character is to carry out the intention of the parties, wherever that is doubtful the grant is construed most beneficially for the citizen and most strongly against the Sovereign power. As a pardon is an act of grace, it is a universal rule of interpretation that limitations upon the operation of such a grant of clemency should be strictly construed. 20 R. C. L., p. 547, § 29; *Lee v. Murphy,* 22 Grat. (Va.), 789; 12 Am. Rep., 563; *Osborn v. U. S.,* 91 U. S., 474; 23 L. Ed., 388.

So construed and interpreted we are clearly of the opinion that the "parole during his good behavior" of the petitioner, Grover Crooks, on December 22, 1921, did not suspend or hold in abeyance the sentence of the Court under which he was imprisoned. While not dependent on statutory authority for its legal efficacy, since the issuance of a parole was clearly within the constitutional powers of the Governor, the "parole" order of Governor Cooper is to be construed in the light of the statute (Section 988, Criminal Code of 1912), providing that "in any case that may be deemed proper by the Governor, he may suspend sentence or parole any prisoner upon such terms or conditions as he may deem just in the exercise of executive clemency." If the word "parole" be given the same meaning as the term "suspend sentence," as used in

this statute, it is obvious that the insertion of the word "parole" was useless and misleading. In conformity with established rules of statutory construction, such meaning should be attributed to the word "parole" as will not render its use redundant and tautological. If so, it would seem difficult, if not impossible, to give the word "parole" any significance different from the term "suspend sentence," which would neverthless include the meaning and have the effect of suspending a prisoner's sentence. We think the clear intent of the Legislature was to use the word "parole" in contradistinction to "suspend sentence" as meaning a leave of absence from prison bounds that did not entail a suspension of the running of the sentence. In none of the cases involving the force and effect of conditional pardons, appearing in our reports, was the conditional pardon in the form of a "parole." The presumption must be indulged that, in granting the parole to Crooks, the Governor used the word advisedly in the same sense it was used by the makers of the statute law of the State, and that if he had intended that the grant to the prisoner should "suspend sentence" he would have said so by using the appropriate term suggested by the statute itself.

To attribute to the word "parole" the meaning of a conditional release from imprisonment which does not suspend the running of the prisoner's sentence is entirely in accord with the etymology of the word. The English word "parole" is a shortened form of the French parole, *d'honneur* (word of honor), the derivation of which the lexicographers trace to the late Latin *parabola,* and the Greek παραβολή, story, parable, adopted into English as "parol," i. e., verbal, oral, word of mouth as now used in the legal term "parol evidence." Its primary use in English is as a military term, signifying the engagement given by a prisoner of war that if released he will not again take up arms against his captors during the term of the engagement or the war." Ency. Britt. (11th Ed.). In applying the

term "parole," thus borrowed from military law, to the release of a prisoner detained by the civil authorities, the limitation of the prisoner's obligation to fulfill the conditions of his parole to the term for which he was sentenced to penal servitude, in the absence of other definition prescribed by the controlling authority, would seem to be clearly and fairly implied. It is for that reason, doubtless, that many of the statutes of the various States that have adopted the so-called "parole system" in the operation of their penal institutions, expressly provide that a "parole" shall not have the effect of suspending the prisoner's sentence. One of the frequently cited decisions, construing a statute of that character is *Fuller v. State,* 122 Ala., 32; 26 South., 146; 45 L. R. A., 502; 82 Am. St. Rep., 1. See other cases cited in notes, 111 Am. St. Rep., 114; and 10 Ann. Cas., 203. But in the absence of statutory authority for assigning that special signification to "parole," the view herein adopted seems to have the approval of such of the American Courts as have had occasion to consider the question. *Scott v. Chichester,* 107 Va., 933; 60 S. E., 95; 16 L. R. A. (N. S.), 304; *Woodward v. Murdock,* 124 Ind., 439; 24 N. E., 1047; *State v. Hunter,* 124 Iowa, 569; 100 N. W., 510; 104 Am. St. Rep., 361; and see *In re* Prout, 12 Idaho, 494; 86 Pac., 275; 5 L. R. A. (N. S.), 1064; 10 Ann. Cas., 199. Where, therefore, as in this case, there is statutory authority warranting, if not requiring, that the term "parole" shall be construed to exclude the meaning of a suspended sentence, the conclusion would seem to be irresistible that such interpretation should be accorded the "parole" of the prisoner at the bar.

It remains to determine whether, on September 13, 1922, the date of the executive order purporting to revoke Crooks' parole and restore him to the status of a convict, the sentence of the paroled prisoner had expired by operation of law. When sentenced to a term of six years' imprisonment on November 10, 1916, "an act to

allow certain convicts credit for time on account of good behavior," approved February 14, 1914 (28 Stat., 617), was in full force and effect.

The provisions of that statute, therefore, entered into and became a part of the sentence imposed upon the petitioner by the Court. The Act provides "that any person now or hereafter, serving a sentence imposed by any Court * * * shall be entitled to have one-tenth of such sentence deducted at the end thereof for good behavior," and makes the refusal of any official custodian to allow such deduction a misdemeanor. Since the "parole" of Crooks on December 22, 1921, did not suspend the running of his sentence, he remained in contemplation of law as if in legal custody and continued to serve his sentence, although absent with leave from prison bounds. See 29 Cyc., 1562 (F). Referring to the common form of statutory parole for which provision is made in many States, the author of the note to *Woods v. State of Tennessee,* L. R. A., 1915F, 531, says:

"The parole intended by most of these statutes does not end the sentence, and, whatever may be the theory of the parol on general principles, those granted under most statutes do not even suspend the sentence. The prisoner is not a free man while out on parole, and he continues to serve time on his sentence until the expiration thereof."

One of the few cases, involving a parole granted under the general pardoning power of the Governor in the absence of a statute, that has come to our attention is that of *Woodward v. Murdock,* 124 Ind., 439; 24 N. E., 1047. In that case the Court said:

"During the time * * * he was out on parole he was not a free citizen; he was, as we have seen, still a prisoner, and notwithstanding his prison bounds were not so contracted as were the prison bounds of an insolvent debtor, at the time our laws recognized imprisonment for debt, still he was given prison bounds. He was not permitted to

come into the State of Indiana. All the consequences of the judgment were upon him, except that he had leave of absence from the prison. As the appellant was a prisoner absent from the prison by the proper authority, under no view of the case, in our opinion, could his imprisonment be continued longer than the period' for which he was sentenced less his credit for good time."

In *Scott v. Chichester,* 107 Va., 933; 60 S. E., 95; 16 L. R. A. (N. S.), 304, it was likewise held that (syllabus) :

"A prisoner who is paroled without statutory authority cannot, upon violation of his parole, be. required to remain in prison beyond the time when the original sentence expired."

See, also, *Ex parte Prout,* 12 Idaho, 494; 86 Pac., 275; 5 L. R. A. (N. S.), 1064; 10 Ann. Cas., 199, and *State v. Hunter,* 124 Iowa, 569; 100 N. W., 510; 104 Am. St. Rep., 361.

If, therefore, the petitioner, Crooks, continued to serve his sentence while out on parole, by the express terms of the statute, he was entitled to the benefit of the deduction therein allowed at the end of his sentence "for good behavior." If entitled to the statutory deduction, Crooks' sentence would have expired on or about April 5, 1922. He alleges under oath in his petition that "his time expired in April, 1922," thereby averring, by implication at least, that his record for "good behavior" for the entire period of his sentence prior to April 5, 1922, was such as to entitle him to the statutory deduction. That allegation was neither denied in respondent's return nor controverted by proof upon the hearing in this Court. If it be conceded that a breach of the condition of good behavior at any time during the period the petitioner was subject to the service of his sentence, would have worked a forfeiture both of his parole and of the statutory deduction of time on the sentence. it is not made to appear in this proceeding that the petitioner was guilty of such breach. The time of the bad

conduct referred to in the order of revocation is not designated, and, as the order itself was dated some five months after the petitioner's sentence would have expired if shortened by the statutory deduction, it cannot be assumed that such bad conduct occurred prior to April 5, 1922, the date the prisoner's sentence would have expired but for such bad behavior. On the contrary, a due regard for the fundamental principles of the law applicable to proof of an accused person's guilt, would seem clearly to require the indulgence of the presumption of good conduct in favor of the petitioner.

Upon the showing made, we are, therefore, constrained to hold that the sentence imposed upon the petitioner, Crooks, by the Court of General Sessions of Oconee County had expired by operation of law when his "parole" was revoked and his person recommitted to the State Penitentiary by order of the Governor. If so, under the views herein announced, there was then no parole to revoke and no outstanding sentence of a competent Court under which the petitioner could be lawfully reimprisoned.

It would seem scarcely necessary to add that to the lofty motives of the Chief Executive of the State, inspired by a becoming sense of official duty, in seeking to prevent an abuse by unworthy persons of executive clemency heretofore extended to them, this Court accords the fullest recognition. It is meet and proper that beneficiaries of the pardoning power should be held to strict accountability for the fulfillment of the conditions upon which they have received exemption, by grace of the Governor, from executing the judgments imposed by the Courts. But, as the Governor cannot, by executive order, breathe the breath of life into a defunct judicial sentence, neither can this Court recall and revoke a grant of clemency which has become the completed act and executed deed of a former Governor of the State, consummated in the exercise of the

plenary pardoning power, vested in him by our Constitution.

For the reasons stated, it is ordered and adjudged that the respondent is without authority to detain the petitioner in the State Penitentiary, under and by virtue of the order of the Governor recommitting him to serve the sentence imposed by the Court of General Sessions on the 10th day of November, 1916. It appearing upon the hearing in this Court, however, that at the time of his recommitment to the Penitentiary, the petitioner was in the custody of the Sheriff of Oconee County by virtue of a commitment issued by a Magistrate for an alleged failure to furnish a peace bond, it is further ordered and adjudged that he be remanded to the custody of the Sheriff of Oconee County, subject to such commitment papers as are held by him.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.

MR. CHIEF JUSTICE GARY dissents.