# IN THE SUPREME COURT OF IOWA

No. 11–2097

Filed November 9, 2012

**JOHN LOWERY,**

      Appellant,

vs.

**STATE OF IOWA,**

      Appellee.

---

Appeal from the Iowa District Court for Polk County, Donna L. Paulsen, Judge.

Inmate contends the governor's commutation of his sentence requires recalculation of his earned time credit and discharge from prison. **AFFIRMED IN PART; REVERSED IN PART; AND CASE REMANDED.**

Andrea K. Buffington of Glazebrook & Moe, LLP, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

**HECHT, Justice.**

This case requires us to consider the effect of the governor's commutation of an inmate's sentence on the inmate's accumulation of earned time credit under Iowa Code chapter 903A (2011).

## I. Background Facts and Proceedings.

When John Lowery was eighteen years old, he was charged with and convicted of first-degree armed robbery in violation of Iowa Code section 711.2 (1995). His sentence was subject to section 902.12, which prohibited him from being eligible for parole or work release until he had served seventy percent of the maximum term of his sentence. *See* Iowa Code § 902.12(5) (2011).

In early 2011, the governor commuted Lowery's sentence. The commutation order read:

> KNOW YE, that by virtue of the authority vested in me by the law and the Constitution of the State of Iowa, I, Chester J. Culver, Governor of the State of Iowa, do hereby COMMUTE the mandatory minimum requirement portion, only, of the 25-year sentence imposed [on] John H. Lowery #1119812, for the crime of First Degree Armed Robbery, a Class B Felony, in violation of Iowa Code sections 711.2 and 902.12.

> The Iowa Department of Corrections and the Iowa Board of Parole shall take notice of this COMMUTATION OF SENTENCE from a 25-year term, with a mandatory minimum requirement, to a 25-year term, only, and take all necessary steps to effectuate herewith, including the scheduling of a parole review, without delay.

> Furthermore, the Iowa Board of Parole shall consult with the attached letter that outlines my findings, dated January 13, 2011, each time the Board interviews Mr. Lowery, or otherwise considers him for parole or work release.

The governor's letter to the parole board outlined Lowery's history and his reasons for clemency. Specifically, he noted Lowery's young age when he committed the crime and his prior history of drug and alcohol

abuse. He also referenced Lowery's minimal role in the crime—that he accompanied a friend who brandished a weapon and assaulted the victim, but did not actively participate himself. He described how Lowery has participated in rehabilitative programs since being incarcerated, has made payments towards his attorney's fees, has participated in educational opportunities offered to inmates, makes presentations to high school students about the importance of making good decisions, and trains seeing-eye dogs for the blind. The governor concluded:

> While I cannot determine from the status of this commutation file whether or not Mr. Lowery, if his case were to be reviewed by the Board of Parole, would receive a unanimous recommendation for the commutation of his sentence, I have seen enough of the file to be convinced that his application should be carefully considered. And, that cannot happen during such time that he remains subject to the mandatory provisions of his sentencing order.
>
> Under the Iowa constitution, Article IV, section 16, and pursuant to Iowa Code section 914.1, the Governor of Iowa has been granted by its citizens a general clemency power that includes power to grant a commutation of sentence.
>
> . . . .
>
> Pursuant to that power, I commute Mr. Lowery's sentence, to the extent that its mandatory provisions shall now be removed, and I direct the Board of Parole to schedule him for a parole review, without delay.

Lowery filed an application for postconviction relief in June 2011 seeking recalculation of his earned time to comply with the governor's commutation of the mandatory minimum portion of his sentence. Specifically, Lowery contended that with the mandatory minimum portion of his sentence removed he was entitled to accumulate earned time at a faster rate than had been available to him under the original sentence which included a mandatory minimum term of incarceration. If his earned time were calculated at the accelerated rate, Lowery contended he would be entitled to an immediate release. The district

court denied his application, concluding the governor's commutation of Lowery's sentence "changed only the parole eligibility date and did not change the sentence itself (including the rate of accumulation of earned time) or the discharge date." Lowery appealed.

## II. Scope of Review.

We review denials of applications for postconviction relief for correction of errors at law. *Goosman v. State*, 764 N.W.2d 539, 541 (Iowa 2009). To the extent that our decision rests on an interpretation of a statute, we also review statutory interpretation for errors at law. *State v. Gonzalez,* 718 N.W.2d 304, 307 (Iowa 2006). To the extent that we must interpret the governor's commutation of sentence, our review is at law.

## III. Discussion.

Although the case law is sparse, it is generally well-settled that when an inmate's sentence is commuted, the new sentence replaces the former sentence. 59 Am. Jur. 2d Pardon and Parole § 5, at 11–12 (2012); 67A C.J.S. *Pardon & Parole* § 4, at 7 (2002). Usually "[a]fter commutation, the sentence has the same legal effect, and the status of the prisoner is the same, as though the sentence had originally been for the commuted term." *State ex rel. Murphy v. Wolfer*, 148 N.W. 896, 897 (Minn. 1914). In Iowa, the governor's constitutional clemency power may be exercised with broad discretion. For example, we have held the governor may impose conditions on the defendant in exchange for his clemency as long as the conditions themselves are not illegal, immoral, or impossible to be performed. *Arthur v. Craig*, 48 Iowa 264, 267 (1878). In *State ex rel. Davis v. Hunter,* we concluded the governor could not require the defendant to give up "good time" he had earned or accumulated under a statute as a condition of clemency. 124 Iowa 569, 573–74, 100 N.W. 510, 512 (1904). Our decision further noted, however,

that the governor may impose other conditions on a pardon such as abstaining from drinking alcoholic beverages or avoiding being charged with more crimes. *Id.* at 570, 573, 100 N.W. at 511.

In this case, we must decide the legal effect of the governor's commutation of Lowery's sentence in light of the statutory provisions addressing the accumulation of earned time.

Lowery was originally sentenced to a twenty-five-year term with a seventy percent mandatory minimum. This meant that Lowery could not be considered for parole until he completed seventy percent of his sentence. *See* Iowa Code § 902.12(5). This mandatory minimum also affected the rate at which he could accumulate earned time which would provide for a discharge before he served his full sentence. Because his sentence had a mandatory minimum, he accumulated earned time at a slower rate than if his sentence had been for a term of years with no mandatory minimum, and he could accumulate no more than fifteen percent of his total sentence. *See* Iowa Code § 903A.2(1)(*a*). The net effect of the two statutes meant that Lowery would have been eligible for consideration for parole or work release after he had served seventy percent of his sentence (approximately seventeen and a half years). Assuming he accumulated all the earned time allowed under the statute, he would be eligible for discharge after serving eighty-five percent of his sentence (about twenty-one and a fourth years). In contrast, if Lowery had been sentenced to a term of twenty-five years with *no* mandatory minimum, he would have been entitled to accrue earned time at a faster rate. Assuming he had accumulated all the earned time he could, he would have been entitled to release after about eleven and a third years and would have been considered for parole annually.

The governor's order of commutation did not expressly address Lowery's accumulation of earned time. Lowery argues that under such circumstances, we should follow other courts which have concluded "where a commuted sentence does not specifically deny benefits . . . the commuted sentence is with [the] benefits [normally associated with the new sentence]." *State ex rel. Milby v. State*, 471 So. 2d 1000, 1002 (La. Ct. App. 1985). Accordingly, Lowery contends his earned time should have accrued at the accelerated rate from the time of his original sentence, his discharge would have been earned on January 30, 2009, and thus he is entitled to immediate release.

The State argues that the governor did not intend to change the rate at which Lowery accumulated good time and only intended to remove the mandatory minimum that prevented Lowery from having a hearing before the parole board. The State argues that the governor's reference to Lowery being scheduled for a parole hearing and his letter to the parole board outlining his reasons for granting clemency to Lowery demonstrate that the governor had no intention of granting Lowery an immediate release. This is evidenced, the State contends, by the governor's directive that Lowery's request for parole be vetted by the parole board. The State contends we must assume the governor understood the law and the effect of the statute addressing earned time and therefore would have known that if Lowery accumulated earned time at the accelerated rate, he would have been entitled to an immediate release as a consequence of the commutation order. Knowing that, the governor's specific references to parole hearings indicate he did not intend Lowery to accumulate earned time at the faster rate.

We agree that the governor's commutation order cannot really be considered *silent* on the issue of earned time as Lowery argues. The

order and the accompanying letter to the parole board make clear that the governor did not expect he was securing Lowery's release by eliminating the mandatory minimum portion of the sentence. Instead the commutation order required the Iowa Department of Corrections to "take notice of this COMMUTATION OF SENTENCE from a 25-year term, with a mandatory minimum requirement, to a 25-year term, only, and take all necessary steps to effectuate herewith, *including the scheduling of a parole review*, without delay." The letter, written to the parole board, acknowledged that the governor was not sure if Lowery would be a good candidate for parole but required the board to "carefully consider[]" Lowery's file and directed the board to schedule a hearing.

We agree that normally when the governor commutes a sentence, the new sentence replaces the old sentence as of the day of sentencing and that "the status of the [inmate] is the same as though the sentence had originally been for the commuted term." *Pittman v. Richardson*, 23 S.E.2d 17, 18 (S.C. 1942). Thus, normally a prisoner would be entitled to earned time credit applicable to the commuted sentence, but "this right depends on the terms of the commutation." *Id.* In this case, the governor's order and letter to the parole board make clear that he did not intend Lowery to be released, but wanted the parole board to review his case and consider him as a candidate for parole.

Accordingly, we conclude Lowery's earned time should be calculated under section 903A.2(1)(*b*) (the reduced rate) until the time of the governor's commutation. After the commutation, Lowery's earned time must be calculated at the accelerated rate provided for in section 903A.2(1)(*a*).[1] This result gives effect to the governor's intention

---

[1]Our decision should not be understood as a determination that the governor had no authority to fully commute Lowery's sentence on the date of the commutation order notwithstanding the fact that Lowery's accumulated earned time as of that date

expressed in his commutation order that Lowery not be released immediately, but also gives effect—from the date of the commutation order forward—to the plain language of the statute which provides that inmates serving sentences with no mandatory minimums shall accumulate earned time at an accelerated rate.

## IV. Conclusion.

We affirm the district court's determination that the governor's commutation order does not entitle Lowery to an immediate discharge. However, because we conclude the legal effect of the governor's commutation order changes the rate at which Lowery may accumulate earned time from the date of the commutation forward, we reverse that part of the district court's ruling that the commutation had no effect on the rate of Lowery's accumulation of earned time and the resulting tentative discharge date. Accordingly we affirm in part, reverse in part, and remand to the district court for entry of a ruling consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; AND CASE REMANDED.**

---

would not have otherwise required his discharge on that date. Our interpretation of the governor's commutation order leads us to conclude the governor did not intend his act of clemency in this case to change the rate of Lowery's accumulation of earned time for the period before commutation.