# IN THE SUPREME COURT OF IOWA

No. 15–1459

Filed November 18, 2016

Amended January 31, 2017

**SHANNON BREEDEN** and **LAURA HOCHMUTH,**

Appellants,

vs.

**IOWA DEPARTMENT OF CORRECTIONS,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

The Iowa Department of Corrections seeks further review of the decision of the court of appeals accelerating the accrual rate for earned-time credit after a mandatory minimum term is removed at resentencing. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT ORDER REVERSED AND CASE REMANDED.**

Gordon E. Allen, Johnston, for appellants.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

This appeal and two others decided today[1] present the question of how to calculate earned-time (good behavior) credit after an incarcerated juvenile felon serving a prison sentence with a mandatory minimum term is resentenced without the mandatory minimum. According to the counsel for the State, the answer to this question affects the release dates of up to 150 inmates. Sentences subject to a mandatory minimum under Iowa Code section 902.12 (2015) accrue earned-time credit at a slower rate under section 903A.2(1). The offenders and the Iowa Department of Corrections (IDOC) disagree on how to interpret the operative statutory language after *State v. Lyle*, which held that mandatory minimum sentences automatically imposed on defendants for crimes committed as juveniles constituted cruel and unusual punishment under the Iowa Constitution. 854 N.W.2d 378, 400 (Iowa 2014). Numerous offenders were resentenced after *Lyle* to new prison terms without mandatory minimums.[2] We must decide whether these resentencings trigger the faster accrual rate for earned-time credits.

The district court ruled that earned time continued to accrue at the slower rate for Shannon Breeden and Laura Hochmuth based on their convictions for forcible felonies listed in Iowa Code section 902.12. The legislature provided that such crimes were subject to automatic mandatory minimum terms, and under Iowa Code section 903A.2(1)(*b*), inmates serving sentences for such crimes accrue earned-time credit at

---

[1]*See James v. State*, No. 15–1827, 2016 WL ___ (Iowa Nov. 18, 2016) (per curiam); *State v. Coleman*, No. 16–0540, 2016 WL ___ (Iowa Nov. 18, 2016) (per curiam).

[2]*Lyle* permits the resentencing court to impose a mandatory minimum sentence after an individualized hearing. 854 N.W.2d at 403–04. If a mandatory minimum sentence is imposed at resentencing, then earned-time credit accrues at the slower rate.

the slower rate. The court of appeals reversed based on the plain language of section 903A.2(1), which provides earned-time credit accrues at the faster rate for sentences lacking a mandatory minimum term. For the reasons explained below, we hold that upon resentencing without the mandatory minimum, the IDOC must apply the faster rate for earned-time credit. Accordingly, we affirm the decision of the court of appeals, reverse the district court's ruling, and remand this case for entry of an order directing the IDOC to recalculate the offenders' release dates, applying the faster rate.

## I. Background Facts and Proceedings.

The parties stipulated to the following facts. Breeden and Hochmuth were incarcerated under the custody of the IDOC.[3] Breeden was convicted of attempted murder and sentenced to an indeterminate term of twenty-five years.[4] She was age sixteen at the time of her offense. She began serving her prison sentence on March 3, 2003. Hochmuth was convicted of second-degree kidnapping, first-degree robbery, and second-degree robbery and sentenced to an indeterminate term of fifty years. She was age sixteen when she committed her offenses. Hochmuth began serving her prison sentence on September 23, 1997.

---

[3]Breeden and Hochmuth are now on work release. However, the question presented in this appeal is not moot because they are still under the supervision of the IDOC. We also reach the merits because "the underlying question is one of public importance that is likely to reoccur." *Dykstra v. Iowa Dist. Ct.*, 783 N.W.2d 473, 477 n.2 (Iowa 2010).

[4]The facts of that offense are set forth in *State v. Breeden*, No. 14–1789, 2015 WL 8389964, at *1 (Iowa Ct. App. 2015).

Both Breeden and Hochmuth were convicted of felonies listed in Iowa Code section 902.12.[5] Both offenders were subject to the mandatory minimum requirement to serve at least seven-tenths of their sentences before becoming eligible for parole or work release. The IDOC calculated earned time for Breeden and Hochmuth under section 903A.2, which states in part,

> For purposes of calculating the amount of time by which an inmate's sentence may be reduced, inmates shall be grouped into the following two sentencing categories:
>
> *a.* Category "A" sentences are those sentences which are not subject to a maximum accumulation of earned time of fifteen percent of the total sentence of confinement under section 902.12. . . . An inmate of an institution under the

---

[5]Iowa Code section 902.12(1) (2015) reads,

> A person serving a sentence for conviction of the following felonies, including a person serving a sentence for conviction of the following felonies prior to July 1, 2003, shall be denied parole or work release unless the person has served at least seven-tenths of the maximum term of the persons sentence:
>
> 1. Murder in the second degree in violation of section 707.3.
>
> 2. Attempted murder in violation of section 707.11.
>
> 3. Sexual abuse in the second degree in violation of section 709.3.
>
> 4. Kidnapping in the second degree in violation of section 710.3.
>
> 5. Robbery in the first or second degree in violation of section 711.2 or 711.3.
>
> 6. Vehicular homicide in violation of section 707.6A, subsection 1 or 2, if the person was also convicted under section 321.261, subsection 4, based on the same facts or event that resulted in the conviction under section 707.6A, subsection 1 or 2.

This Code section was amended in 2003, 2003 Iowa Acts ch. 156, § 11 (codified at Iowa Code § 902.12 (Supp. 2003)), to require that offenders serve seven-tenths of their sentence. The previous version of the statute mandated, "Except as otherwise provided in section 903A.2 a person serving a sentence for conviction of the following forcible felonies shall serve one hundred percent of the maximum term of the person's sentence" and could not be released on parole or work release. Iowa Code § 902.12 (2001). The 2003 amendment struck the reference, "Except as otherwise provided in section 903A.2," yet left section 903A.2 intact, without reforming the category "A" or "B" designations.

control of the department of corrections who is serving a category "A" sentence is eligible for a reduction of sentence equal to one and two-tenths day for each day the inmate demonstrates good conduct and satisfactorily participates in any program or placement status identified by the director to earn the reduction. . . .

. . . .

*b.* Category "B" sentences are those sentences which are subject to a maximum accumulation of earned time of fifteen percent of the total sentence of confinement under section 902.12. An inmate of an institution under the control of the department of corrections who is serving a category "B" sentence is eligible for a reduction of sentence equal to fifteen eighty-fifths of a day for each day of good conduct by the inmate.

Because Breeden and Hochmuth had committed offenses listed in section 902.12, the IDOC classified their sentences as category "B" and calculated their earned time at a rate of fifteen eighty-fifths per day for each day of good conduct. This classification resulted in a tentative discharge date of November 23, 2023, for Breeden and July 26, 2040, for Hochmuth.

On July 18, 2014, we decided *Lyle*, which required resentencing of all offenders serving prison sentences with automatically imposed mandatory minimum terms for crimes committed as juveniles. 854 N.W.2d at 400. The district court vacated the original sentences and resentenced Breeden and Hochmuth. Each was resentenced to the same indeterminate term of years, but without a mandatory minimum and with immediate eligibility for parole. Their sentencing orders did not address how to calculate or recalculate their earned-time credits. The IDOC continued to classify Breeden's and Hochmuth's sentences as category "B," such that their tentative discharge dates remained the same.

On November 12, 2014, Breeden and Hochmuth filed a consolidated petition for declaratory relief with the IDOC, arguing it

erroneously and illegally calculated their earned time in violation of *Lyle*, the Iowa Constitution, and Iowa Code sections 903A.2 and 902.12. Specifically, the petitioners claimed because they were no longer subject to the mandatory minimum under 902.12, the accrual of earned time for each of their sentences should have been calculated under category "A" at the faster rate of 1.2 days for each day of good conduct, rather than category "B" at the slower rate of fifteen eighty-fifths. On December 3, John Baldwin, then director of the IDOC, denied their petition, concluding that "the method of sentence calculation used by the IDOC is mandated by law and that the IDOC has followed such requirements." He stated,

> While both offenders have had the minimum sentence provision eliminated, both offenders were still sentenced to an offense identified under Section 902.12. As an offender convicted of a Section 902.12 sentence, their earned time accumulation is calculated as a category "B" sentence— which accumulates earned time credit at a rate of 15/85 days of credit for every day served.

Baldwin further noted that under Iowa Code section 903A.5(1), the IDOC could only apply earned-time credit that was "authorized," and "there [was] no statutory authorization for the IDOC to apply a different rate" than fifteen eighty-fifths per day for a category "B" sentence.

On December 30, Breeden and Hochmuth filed a petition for judicial review under Iowa Code section 17A.19 in the Iowa District Court for Polk County, challenging the IDOC's interpretation and administration of the earned-time provisions in section 903A.2. The district court held a hearing on the petition on March 10, 2015.

On May 11, the district court affirmed the IDOC's declaratory order and dismissed the petition for judicial review. First, the district court rejected the constitutional challenge, noting that *Lyle* "specifically

declined to address the calculation of earned time under section 903A.2(1)." *See Lyle*, 854 N.W.2d at 404 n.10 ("The holding in this case does not address the mandatory sentence of incarceration imposed under statutory sentencing schema *or any other issues relating to the sentencing schema.*" (Emphasis added.)). Second, responding to the petitioners' statutory argument, the district court noted that in 2003, the legislature amended Iowa Code section 902.12 to impose a seventy percent, rather than a 100 percent, mandatory minimum, but in so doing, left intact section 903A.2, including the category "B" fifteen eighty-fifths limitation. Thus, the district court concluded,

> From the language used and retained by the legislature in Section 903A.2(1), the Court can reasonably interpret the statute to conclude that the legislature intended that individuals serving sentences for forcible felony crimes under section 902.12 remain subject to a maximum accumulation of earned time of 15 percent even though the mandatory minimum sentence for parole eligibility was reduced to 70 percent[.] Therefore, the individuals convicted of a crime[] listed in section 902.12 are serving category "B" sentences and are eligible for a reduction of sentence equal to 15/85 of a day for each day of good time regardless of whether the court imposes a 70 percent mandatory minimum before eligibility for parole.

The district court emphasized the "purpose of section 903A.2(1) is to incarcerate individuals convicted of the most violent forcible felonies listed in Section 902.12 longer than individuals convicted of other crimes including forcible felonies not listed in Section 902.12." The district court ruled that because the petitioners were sentenced for forcible felony crimes listed in section 902.12, the sentences should still be considered as category "B."

Finally, the district court addressed the petitioners' argument that the category "B" classification violated article I, section 17 of the Iowa Constitution. It found the slower earned-time rate did not offend the

Iowa Constitution because juveniles convicted without a mandatory minimum could be paroled at any time regardless of their tentative discharge dates. Release on parole occurs after an individualized consideration of factors consistent with those required in *Lyle*.[6] Thus, the district court stated this fulfilled the "individualized consideration" requirement under the Iowa Constitution for youthful offenders.

On June 11, petitioners filed a motion for rehearing. The district court overruled this motion on August 3, reiterating, "The determining factor in calculating the rate of accumulation of earned time is whether the court sentenced the offender for a crime listed in Section 902.12." Breeden and Hochmuth appealed, and we transferred the appeal to the court of appeals.

On June 29, 2016, the court of appeals reversed the decision of the district court. The court of appeals focused on the text of the statute, which provided that "Category 'B' *sentences* are those *sentences* which are subject to a maximum accumulation of earned time of fifteen percent of the total sentence of confinement under section 902.12." Iowa Code § 903A.2(1)(*b*) (emphasis added). Relying on the statute's text and *Lowery v. State*, 822 N.W.2d 739, 741–42 (Iowa 2012), the court of appeals concluded that it was the *sentence imposed*, not the type of crime the offender committed, that controlled the earned-time credit calculation. Because Breeden and Hochmuth were no longer subject to a

---

[6]*See* Iowa Code § 906.4(1) (2015) ("The board shall release on parole or work release any person whom it has the power to so release, when in its opinion there is reasonable probability that the person can be released without detriment to the community or to the person."); *id.* § 906.5(3) ("[T]he board shall consider all pertinent information regarding the person, including the circumstances of the person's offense, any presentence report which is available, the previous social history and criminal record of the person, the person's conduct, work, and attitude in prison, and the reports of physical and mental examinations that have been made.").

mandatory minimum, the court of appeals determined the sentences should have been classified as category "A" with an accumulation rate of 1.2 days credit per each day served. The court of appeals did not reach any constitutional claim. We granted the IDOC's application for further review.

## II. Standard of Review.

"We review a district court's interpretation of statutes for correction of errors at law . . . ." *State v. Iowa Dist. Ct.*, 616 N.W.2d 575, 578 (Iowa 2000); *see also Lowery*, 822 N.W.2d at 741 ("[W]e also review statutory interpretation for errors at law.").

## III. Analysis.

This appeal turns on the interplay between two sections of the Iowa Code, one of which was partially stricken on state constitutional grounds. Section 903A.2(1) governs earned-time credit and, expressly referring to section 902.12, provides two different accrual rates based on whether the sentence includes a mandatory minimum term. Section 902.12 automatically imposes mandatory minimum terms for certain felonies, but that automatic feature was held unconstitutional as to juveniles in *Lyle.* The legislature's intent is clear from the plain language it chose in these statutes—offenders serving prison time for the forcible felonies listed in section 902.12 are subject to a mandatory minimum term *and* accrue earned-time credit at the slower rate. We must determine the accrual rate after the mandatory minimum sentence is stricken as unconstitutional. We apply the severability doctrine to resolve the question.

**A. The Severability Doctrine**. "When parts of a statute or ordinance are constitutionally valid, but other discrete and identifiable parts are infirm, we may sever the offending portion from the enactment

and leave the remainder intact." *Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416, 418 (Iowa 1991) (per curiam). We must do our best "to save as much of the statute as possible, eliminating only that which is necessary to make it constitutionally sound." *Clark v. Miller*, 503 N.W.2d 422, 425 (Iowa 1993) (quoting *Harryman v. Hayles*, 257 N.W.2d 631, 635 (Iowa 1977), *overruled on other grounds by Miller v. Boone Cty. Hosp.*, 394 N.W.2d 776, 781 (Iowa 1986)).

> Severance of unconstitutional provisions from constitutional portions of a statute is appropriate if it does not substantially impair legislative purpose, the enactment remains capable of fulfilling the apparent legislative intent, and the remaining portion of the enactment can be given effect without the invalid provision.

*Id.*

Severability protects an act from total nullification if discrete portions are unconstitutional. Jacob Scott, *Codified Canons and the Common Law of Interpretation*, 98 Geo. L.J. 341, 384 (2010) [hereinafter Scott]. We "leave the valid parts in force on the assumption that the legislature would have intended those provisions to stand alone." *Id.* This promotes the separation of powers and stable legislative policies by permitting as much of a statute to survive as possible. *Id.* at 386. To that end, the Iowa legislature has codified a general severability provision, instructing,

> If any provision of an Act or statute or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the Act or statute which can be given effect without the invalid provision or application, and to this end the provisions of the Act or statute are severable.

Iowa Code § 4.12.[7]

We have adhered to this rule of constitutional restraint for over 100 years. *See, e.g., State v. Louisell*, 865 N.W.2d 590, 600 (Iowa 2015) (striking mandatory minimum for juvenile offenders while preserving remainder of sentencing statute in section 902.1); *Bonilla v. State*, 791 N.W.2d 697, 701–02 (Iowa 2010); *Clark*, 503 N.W.2d at 425; *Am. Dog Owners*, 469 N.W.2d at 418; *State v. Blyth*, 226 N.W.2d 250, 261–62 (Iowa 1975); *Frost v. State*, 172 N.W.2d 575, 586 (Iowa 1969); *Smith v. Thompson*, 219 Iowa 888, 896–97, 258 N.W. 190, 195 (1934), *overruled in part on other grounds by Carlton v. Grimes*, 237 Iowa 912, 939, 23 N.W.2d 883, 897 (Iowa 1946); *State v. Santee*, 111 Iowa 1, 8–9, 82 N.W. 445, 447–48 (1900).[8]

We thoroughly reviewed the severability doctrine in *State v. Monroe*, 236 N.W.2d 24, 35–36 (Iowa 1975) (en banc). We held the sentencing statute for delivery of a controlled substance unconstitutional

---

[7]Scott notes, "Legislatures are wildly enthusiastic about severability: it is codified in thirty-five jurisdictions; none have rejected it." Scott, 98 Geo. L.J. at 385. For a more thorough treatment of the favorability of the rule of severability in other jurisdictions, see his article. *Id.* at 385–87.

[8]Federal courts apply equivalent severability principles. "Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 37 (D.C. Cir. 2016) (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508, 130 S. Ct. 3138, 3161, 177 L. Ed. 2d 706, 733 (2010)). "The 'normal rule' is 'that partial, rather than facial, invalidation is the required course.'" *Id.* (quoting *Free Enter. Fund*, 561 U.S. at 508, 130 S. Ct. at 3161, 177 L. Ed. 2d at 733).

> That is true so long as we conclude that (i) Congress would have preferred the law with the offending provision severed over no law at all; and (ii) the law with the offending provision severed would remain "fully operative as a law."

*Id.* (quoting *Free Enter. Fund*, 561 U.S. at 509, 130 S. Ct. at 3161, 177 L. Ed. 2d at 733).

under the Due Process Clause because it improperly shifted the burden to defendant to prove he delivered only as an accommodation for another. *Id.* at 32–33, 34. We noted the "difficult and delicate" task remained of determining whether the portion could be severed or the statute must "fall in its entirety." *Id.* at 35. We declared, "[T]he cardinal principle of statutory construction is to save and not to destroy." *Id.* (quoting *Blyth*, 226 N.W.2d at 261). We elaborated,

> "Whether the valid and the invalid parts of a statute are independent and separable, or interdependent, is a question of construction and of legislative intent, as indicated by the words employed and the considerations underlying the enactment of the statute, and the question is not one of legislative power. A statute may be unconstitutional in part and yet be sustained with the offending part omitted, if the paramount intent or chief purpose will not be destroyed thereby, or the legislative purpose not substantially affected or impaired, if the statute is still capable of fulfilling the apparent legislative intent, or if the remaining portions are sufficient to accomplish the legislative purpose deducible from the entire act, construed in the light of contemporary events.
>
> If when the invalid part is stricken, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, or purpose, wholly independent of that which was rejected, it must be sustained to that extent . . . ."
>
> The converse of the above proposition acts as a limit on our power to partially invalidate a statute and leave the constitutionally inoffensive portions in force. If it appears the legislature probably would not have enacted the statute at all if the invalid part had been eliminated, then the whole must fall.

*Id.* at 35–36 (quoting *Blyth*, 226 N.W.2d at 262). Applying those principles, we deduced a legislative intent to "treat accommodation deliverers less harshly than nonaccomodators." *Id.* at 36. Because excising only the offensive burden-shifting phrase of the statute would leave "a viable statute expressive of legislative intent," we eliminated only that portion and upheld the remainder. *Id.*

We applied the severability doctrine to a sentencing statute in *Bonilla,* when we severed an unconstitutional mandatory life term to allow parole, but upheld the remaining provisions of the enactment. 791 N.W.2d at 701–02. We now turn to whether that approach will work here.

**B. Application of the Severability Doctrine**. We first address the intent of the legislature in enacting Iowa Code sections 902.12 and 903A.2. The State notes the legislature intended to punish more harshly the offenses listed in Iowa Code section 902.12 in two ways: (1) by imposing a mandatory minimum, and (2) by providing for a slower accrual rate for earned-time credit. The district court accurately acknowledged that "[t]he purpose of section 903A.2(1) is to incarcerate individuals convicted of the most violent forcible felonies listed in Section 902.12 longer than individuals convicted of other crimes including the forcible felonies not listed in Section 902.12."[9] To effectuate this purpose, the district court applied the severability doctrine to excise the unconstitutional mandatory minimum, while still giving effect to the remainder of the statutes, including the slower accrual rate for earned time for felonies listed in section 902.12.

We struck down section 902.12's mandatory minimum provision for juvenile offenders in *Lyle* and now must determine whether the slower

---

[9]The legislature clearly intended to punish more harshly offenders convicted of certain forcible felonies listed in section 902.12. *See State v. Ceasar*, 585 N.W.2d 192, 196,198 (Iowa 1998), *overruled on other grounds by State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009) (concluding that the offenses listed in section 902.12 were treated differently because they had "a broader social impact and, therefore, [were] deserving of a greater punishment"); *see also State v. Cronkhite*, 613 N.W.2d 664, 669 (Iowa 2000) (evaluating section 902.12 and stating that "[i]t is entirely reasonable for the legislature to conclude the crime of murder in the second degree has a broad social impact warranting strict punitive measures").

accrual rate in section 903A.2 survives. We conclude that it does not because the legislature expressly tied the slower accrual rate to *sentences* with mandatory minimums, rather than to the *crimes* listed in section 902.12. The court of appeals aptly observed,

> Section 903A.2(1)(*b*) does not say category "B" sentences are those sentences being served for crimes listed in section 902.12. Rather, section 903A.2(1)(*b*) categorizes a sentence as a "B" sentence when the *sentence* is 'subject to a maximum accumulation of earned time of fifteen percent of confinement under section 902.12.' The focus of the language in section 903A.2(1)(*b*) is not on the *offense* committed but the sentence being served.

We agree. We must give effect to the legislature's choice of the word "sentence," rather than "crime" or "conviction" in section 903A.2(1)(*b*). Accordingly, an offender is only subject to the slower rate of accrual when he or she has received a "sentence" with a mandatory minimum.

We reached that conclusion in *Lowery*, when we interpreted section 903A.2(1) to determine the earned-time accrual rate after the governor commuted a sentence by removing the mandatory minimum. 822 N.W.2d at 741–42. John Lowery was convicted of first-degree armed robbery at age eighteen and sentenced to twenty-five years in prison. *Id.* at 740. Lowery's conviction of a crime listed in section 902.12 required him to serve a minimum of seventy percent of his sentence before being eligible for parole. *Id.* In 2011, the Governor commuted Lowery's sentence, removing the mandatory minimum and stating that the IDOC must "take all necessary steps to effectuate herewith, including the scheduling of a parole review, without delay." *Id.* When the IDOC continued to calculate his earned time at the slower rate after the commutation, Lowery filed an application for postconviction relief, noting that if his earned time had been calculated at the accelerated rate, he would be entitled to immediate release. *Id.* at 741. The district court

denied the application, finding that the commutation had "changed only the parole eligibility date and did not change the sentence itself (including the rate of accumulation of earned time) or the discharge date." *Id.* We reversed, interpreting the language of section 903A and stating,

> Lowery was originally sentenced to a twenty-five-year term with a seventy percent mandatory minimum. . . . Because his sentence had a mandatory minimum, he accumulated earned time at a slower rate than if his sentence had been for a term of years with no mandatory minimum, and he could accumulate no more than fifteen percent of his total sentence. . . . In contrast, if Lowery had been sentenced to a term of twenty-five years with *no* mandatory minimum, he would have been entitled to accrue earned time at a faster rate.

*Id.* at 741–42 (citation omitted). We noted that "it is generally well-settled that when an inmate's sentence is commuted, the new sentence replaces the former sentence." *Id.* at 741. But because the Governor made clear in the language of the commutation that Lowery should not be eligible for release immediately, we determined Lowery was entitled to have earned time accrue at the accelerated rate only after the date of the commutation order. *Id.* at 743. "This result," we concluded,

> gives effect to the governor's intention expressed in his commutation order . . . , but also gives effect—from the date of the commutation order forward—to the plain language of the statute which provides that inmates serving sentences with no mandatory minimums shall accumulate earned time at an accelerated rate.

*Id.*

The State argues *Lowery* is distinguishable as involving interpretation of a commutation order. We agree that our interpretation of the commutation order explains why we allowed the slower rate of earned-time accrual before the date of the commutation. But our holding—that the faster accrual rate applies upon the removal of the

mandatory minimum—was based on our interpretation of section 903A.2(1). We reaffirm that interpretation today: removal of the mandatory minimum triggers the faster 1.2-day accrual for earned-time credit. Moreover, the State concedes that the resentencing replaces the original sentence. We hold that upon resentencing without the mandatory minimum, the IDOC must recalculate earned-time credits using the faster category "A" 1.2-day accrual rate for the inmate's entire period of incarceration.

We recognize that one effect of our interpretation undermines the legislative intent to punish crimes listed in section 902.12 more harshly. Inmates whose mandatory minimum sentences have been removed after *Lyle* will now accumulate good time faster, and thereby obtain earlier release. Indeed, an inmate receiving a twenty-five-year sentence that accumulates all possible earned time may discharge the sentence in as little as 11.36 years under the accelerated rate. Thus, Breeden, whose tentative discharge date previously was November 23, 2023, will now be entitled to immediate release. Hochmuth's tentative discharge date will also be greatly accelerated. Nevertheless, we cannot save the slower accumulation rate because it is contingent upon the mandatory minimum. In *Iowa District Court*, we recognized that sections 902.12 and 903A.2 operated *together*. 616 N.W.2d at 579 ("The practical effect of these two statutes is to require that a defendant convicted of a forcible felony listed in section 902.12 must serve at least 85% of his sentence.").[10] The "factual predicate for application of the statutes— conviction of the forcible felony"—triggers the mandatory minimum of

---

[10]*Iowa District Court* was decided under a former version of Iowa Code section 902.12 requiring an inmate to serve 100% of his or her sentence before being eligible for parole. *See* 616 N.W.2d at 579.

section 902.12, which in turn triggers the slower earned time accumulation rate. *See id.* Removal of the mandatory minimum eliminates the prerequisite for the slower earned-time accrual rate.

Our interpretation is supported by the legislative history, which confirms the slower accrual rate works hand in glove with the mandatory minimum. The "legislative purpose of earned-time credits . . . is to encourage prisoners to follow prison rules and participate in rehabilitative programs." *Kolzow v. State*, 813 N.W.2d 731, 738 (Iowa 2012). Under section 903A.2, an inmate serving a category "B" sentence can only earn a maximum of fifteen percent of earned time to reduce his sentence. The legislative history of section 903A.2 reveals the slower accumulation rate was enacted out of concern that if all inmates received the same rate, inmates subject to the fifteen-percent cap would earn all their eligible good time very quickly and lose the incentive to behave for the remainder of their sentences. The study bill proposing the slower accumulation rate states,

> Recent amendments to the code requiring offenders to serve 85% of their sentence has created conflicts within the existing statutes relating to good time. . . . [I]nmates serving an 85% sentence accumulate "good time" at the same rate as before, even though it does not shorten their sentence. This means that good time is no longer an incentive for good behavior because an inmate can earn all good time needed in a very short time.

H. Study B. 73, 77th G.A., Reg. Sess., rationale for change (Iowa 1997); *cf. Star Equip., Ltd. v. State*, 843 N.W.2d 446, 454 (Iowa 2014) ("[W]e give weight to explanations attached to bills as indications of legislative intent." (quoting *Root v. Toney*, 841 N.W.2d 83, 88 (Iowa 2013))). As enacted, inmates subject to the mandatory minimum received a slower accrual rate—fifteen eighty-fifths per day—to ensure that earned time remained an incentive for good behavior throughout the inmate's

sentence.[11]  1997 Iowa Acts ch. 131, § 2 (codified at Iowa Code § 903A.2 (Supp. 1997)).

When a district court removes the mandatory minimum under section 902.12, offenders are immediately subject to parole and work release.  Thus, there is no need to decelerate the accumulation rate to allow good time to remain an incentive.  The mandatory minimum and slower accumulation rate are inextricably linked.  We therefore conclude that we cannot save the slower accrual rate without a mandatory minimum.  When deciding whether to sever, we must ask ourselves whether the legislature would have enacted the statute at all if the invalid part had been eliminated.  *See Monroe*, 236 N.W.2d at 36.  The legislature likely would not have enacted the slower rate without a mandatory minimum.

### IV. Disposition.

For these reasons, we affirm the decision of the court of appeals, reverse the ruling of the district court, and remand the case for entry of an order directing the IDOC to apply the faster earned-time rate in section 903A.2(1)(*a*) to the sentences of Breeden and Hochmuth.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT ORDER REVERSED AND CASE REMANDED.**

---

[11]The math behind the fifteen eighty-fifths rate supports this interpretation. According to the Legislative Services Agency, an inmate serving a twenty-five-year sentence who is subject to the fifteen percent cap on good time credit can only accumulate a maximum of 3.75 years (or 1368.75 days) earned time.  Joe McEniry, *Legal Background Briefing on Seventy Percent Sentences*, Legislative Services Agency (December 2010), www.legis.iowa.gov/docs/publications/BF/13760.  Under the 1.2 rate, the inmate would accumulate all possible earned time in a little over three years (3.125 years).  Afterward, the inmate would have no behavioral motivation for the remainder of his sentence.  In contrast, under the fifteen eighty-fifths rate, the inmate does not accumulate the maximum amount of good time until approximately 21.25 years.  *Id.*  Thus, the inmate remains motivated throughout the sentence to earn good-time credit.